THE PEOPLE OF THE STATE OF NEW YORK ex rel. JOHN J. MALONEY, Appellant, *v.* ANTHONY C. DOUGLASS et al., Composing the Board of Police Commissioners of the City of Niagara Falls, Respondents.

Public officers — construction of statutes authorizing removal thereof — illegal removal of chief of police of city of Niagara Falls.

The summary removal from public office of an incumbent, entitled to hold during good behavior, is not favored by the courts, for it is opposed to the principle that no one should be condemned without a hearing.

146     People ex rel. Maloney *v.* Douglass.    [Mar.,

Statement of case.     [Vol. 195.

If the intention of the legislature to authorize a summary removal is clear, the courts, as in duty bound, will give it effect, but if it is doubtful, the doubt will be resolved against the existence of arbitrary power and in favor of a trial before judgment.

What may be done under a statute, not necessarily what has been done, has a material bearing upon the intention of the legislature when its words are not free from doubt. . Presumption favors a construction that will give a reasonable and not a harsh effect to the language used.

The provisions of the charter of the city of Niagara Falls relating to the appointment and removal of members of the police force by the board of police commissioners (L. 1904, ch. 300, §§ 273–275) examined, and *held*, that sections 274 and 275 must be read and construed together, and that so read they do not authorize the summary removal of a member of the police force without the presentation of charges in writing and a public trial.

*People ex rel. Maloney* v. *Douglass,* 121 App. Div. 116, reversed.

(Argued March 15, 1909; decided March 30, 1909.)

Appeal from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered July 12, 1907, which confirmed the proceedings of the defendants in removing the relator from the position of chief of police of the city of Niagara Falls and dismissed a writ of certiorari to review the same.

The facts, so far as material, are stated in the opinion.

*Augustus Thibaudeau* for appellant. It was the intent of the legislature that the board of police commissioners of the city of Niagara Falls should have no power under sections 273, 274 and 275 of the Niagara Falls charter to summarily remove its chief of police, or any of its police officers, without preferring charges and without a trial and an opportunity to be heard in their defense. (*Newell* v. *People,* 7 N. Y. 97; Sedgwick on Stat. Const. [2d ed.] 202; *Smith* v. *People,* 47 N. Y. 336; *McClusky* v. *Cromwell,* 11 N. Y. 601; *Comm.* v. *Duane,* 1 Binn. 601; *Comm.* v. *Alger,* 7 Bush, 53; *People ex rel. Gere* v. *Whitlock,* 92 N. Y. 198; *People ex rel. Jordan* v. *Martin,* 152 N. Y. 316; *Kelly* v. *Multnomah Co.,* 18 Ore. 356; *People ex rel. Mayor* v. *Nichols,* 21 N. Y. 582.) The contention of the respondents that the powers

1909.]    People ex rel. Maloney *v.* Douglass.    **147**

N. Y. Rep.]        Opinion of the Court, per Vann, J.

conferred by sections 274 and 275 are different, distinct and complete in themselves; that the exercise of the powers con-. ferred by one section is in, no wise made dependent upon the provisions of the other; ·in short, that section 274 confers executive power of removal and section 275 confers judicial power of removal, and that effect must be given to both, is untenable. (Sutherland on Stat. Const. 541; *Albertson* v. *State*, 9 Neb. 429; *Harrington* v. *City of Rochester*, 10 Wend. 550; *Farmers' Bank* v. *Hale*, 50 N. Y. 53; *People* v. *Webster*, 10 Wend. 554; *Dahnke* v. *People*, 39 L. R. A. 200; *Blaschko* v. *Wurster*, 156 N. Y. 437; *Hoey* v. *Gilroy*, 129 N. Y. 138; *City of Poughkeepsie* v. *Quintard*, 136 N. Y. 280.)

*Franklin J. Mackenna* for respondents. Section 275 of the charter has no application where the removal is based upon the personal knowledge of the commissioners. (*Woods* v. *Supervisors*, 136 N. Y. 403; *People ex rel.* v. *N. Y. C. Protectory*, 101 N. Y. 195; *County of Orange* v. *Ellsworth*, 98 App. Div. 275.)

Vann, J.   By section 16 of the charter of the city of Niagara Falls (L. 1904, ch. 300) the mayor is authorized to appoint two police commissioners, and according to section 270 those commissioners, together with the mayor as chairman, constitute the board of police commissioners, a quorum consisting of "any two members." By section 272 the board is empowered to prescribe and enforce rules and regulations for the government of the police force of the city, not inconsistent with the laws of the state, and by section 273 to appoint a chief of police, sergeants and policemen, who "shall hold office until removed for some cause or causes herein specified." The next two sections are as follows: "§ 274. The board, by an affirmative vote of at least two commissioners, may at any time remove from office the chief of police or any policeman, or other appointee, *when he shall be found* to be incompetent or negligent or guilty of misconduct or unable to perform the duties of his

office, or guilty of willfully violating any of the rules, regulations or orders of the board of police commissioners or any superior officer, and appoint in his place and stead some other person as herein provided.

"§ 275. If a charge be made by any person against any member of the police force, that he is incompetent, or has been guilty of neglect of duty, misconduct in his office, or of conduct unbecoming a police officer, the charge must be put in writing in the form required by the rules of the police department, and a copy thereof must be served · upon the accused officer. It is then the duty of the board to hear, try and determine the charge according to the rules of the police department. The accused officer shall have the right to be present at his trial, and to be heard in person and by counsel, and give and furnish evidence in his defense. All trials shall be open to the public. Any commissioner shall have power to issue subpœnas attested in his name to compel the attendance of witnesses upon any proceeding authorized by the rules and regulations of the police department, and any person duly served with a subpœna is bound to attend in obedience to the command thereof and the commissioner shall have the same authority to enforce obedience to the subpœna, and to punish for disobedience thereof, as is possessed by justices of the peace in like cases. If the accused officer shall be found guilty of the charge made against him, the board of police commissioners may order his suspension from pay for some definite time, or impose upon him a fine not exceeding fifty dollars, or reduce his grade, or dismiss him from the police force, or subject him to any other discipline prescribed in the rules of the police department which is not inconsistent with the provisions of this act or with other laws of the state. The decision shall be in writing and be immediately filed with the city clerk."

The regulations of the board provide that charges preferred against any member of the police force must be in writing and verified by the affidavit of the party preferring the same, except in the case of complaints or charges by a police com-

missioner or a police magistrate. They further provide that "No officer shall be removed from the police force, except upon charges preferred as above, and an opportunity afforded him to be heard in his defense." Service of a copy of the charges upon the officer against whom they are made together with a notice of at least two days of the time and place at which an opportunity will be given to him to be heard in his defense is also required.

On the 17th of July, 1890, the relator was appointed a patrolman and served as such until the 15th of May, 1894, when he was appointed sergeant and he served in that capacity until the 17th of April, 1902, when he was appointed chief of police. On the 14th of February, 1907, he was asked by the mayor to resign and upon refusing to comply was suspended by the mayor from his said office. On the 4th of March, 1907, a complaint in writing against him was presented to the board charging him with incompetency, intoxication, neglect of duty, untruthfulness and insubordination. These charges were made by the mayor and verified by him. On the same day a copy of the charges was served upon the relator together with a notice signed by the mayor as chairman of the board, requiring him to appear and answer the charges at a place named on the 6th of March, 1907, at two o'clock in the afternoon. At the time and place specified the relator appeared and filed an answer duly verified denying said charges and explaining his conduct in some respects. The corporation counsel, who appeared as counsel for the prosecution, stated that he could not put in his evidence until a later day and the counsel for the relator asked for an opportunity, when the evidence against him was in, to subpœna witnesses and produce evidence in answer. Thereupon, the mayor, as chairman of the board, said, "You shall be afforded any time or opportunity that you wish for producing your witnesses." The proceeding was then adjourned until March 12th, 1907, at ten o'clock in the forenoon. On the 8th of March, or four days prior to the day to which the proceeding had been adjourned, the board met without notice to the relator and

adopted three separate resolutions, by the first of which they removed him from the office of chief of police, by the second appointed his successor, and by the third discontinued the proceeding that had been instituted against him. On the 12th of March, at the hour and place to which that proceeding had been adjourned, the relator attended ready to proceed with the trial, but the commissioners were not present and no one appeared against him. He thereupon notified the board that as the period of his suspension had expired, and the charges against him had not been proved nor any trial had, he was ready to discharge his duties as chief of police in obedience to the charter. No notice appears to have been taken by the board of this communication.

On the 2nd of April, 1907, the relator procured a writ of certiorari, which, after argument, was dismissed by the Appellate Division, and the determination of the respondents removing him was in all things confirmed. Thereupon he appealed to this court.

The summary removal from public office of an incumbent entitled to hold during good behavior, is not favored by the courts, for it is opposed to the principle that no one should be condemned without a hearing. While the legislature has the power to so authorize when the office is not protected by the Constitution, it is seldom exercised and when exercised is usually accompanied with some precaution to protect the officer, such as an opportunity to explain or the requirement that the reasons for the removal should be fully stated and filed in some public office, so as to be open to public criticism. If the intention of the legislature is clear, the courts as in duty bound will give it effect, but if it is doubtful, the doubt will be resolved against the existence of arbitrary power and in favor of a trial before judgment.

The relator was removed without a trial and without legal evidence, for the commissioners state in their return that they acted upon their personal knowledge and inquiry. They claim that sections 274 and 275 of the charter provide separate and independent remedies, the one for removal from

necessity, without charges or a trial, and the other for punishment by removal, or otherwise, after a trial and conviction upon charges preferred. If this is the correct construction, the most severe punishment authorized by either section, that of removal, may be inflicted without a trial, while the milder punishment of fine, suspension, or reduction of grade can be inflicted only after a trial had according to the usual forms required by law with the aid of witnesses and counsel. Such a construction would be in direct conflict with the regulations of the board itself, which prohibit a removal, except upon charges and an opportunity to be heard.

Section 274 specifies no method of procedure, and if that section only is followed the removal, or the determination to remove, need not be in writing. Every member of the force would be subject to removal, upon the allegation of incompetency, for instance, without any statement of how or in what respect he was incompetent. There can be no removal except for cause (§ 273) and the officer must be "found" guilty of a fault specified in the statute (§ 274). This implies a trial in the usual form .of law upon evidence given publicly, under the sanction of an oath. Any other construction would undermine permanency in the tenure of office which the charter prescribes, for, as the legislature well knew and as experience shows, a change of administration frequently leads to furtive action in order to get control of the offices. Political parties, as a rule, cannot be trusted to deal with offices in the dark when permanency of tenure is the policy of the law. Publicity is a substantial protection against underhanded methods and section 274 does not require that safeguard. A commission of one political faith might regard an officer of a different political faith as incompetent because he was not in sympathy with the administration in control of city affairs and yet a removal, in fact based on that ground, could not easily be set aside, because, if section 274 is alone to be considered, the grounds of the removal or the reasons therefor need not be stated. What may be done under a statute, not necessarily what has been done, has a material bearing upon

the intention of the legislature when its words are not free from doubt. Presumption favors a construction that will give a reasonable and not a harsh effect to the language used.

When both sections are read together all difficulties vanish, for the public is protected and the officer is not sacrificed. One section provides that the officer must be found guilty, and the other, in immediate succession, prescribes the method by which he may be found guilty. The one confers power and the other regulates its exercise. While both authorize a removal, the earlier only authorizes the appointment of a successor, "as herein provided." For authority to fill the vacancy caused by a removal after a trial under section 275, reference must be made back to section 274. It will be observed that no provision expressly permits a removal from necessity, or without a trial and none can be implied without seriously affecting, if not virtually destroying, permanency of tenure which is expressly required by the charter.

We think the legislature intended that the two sections, both relating to the same subject and one directly following the other, should be read together. It did not intend to forbid the removal of officers except for "cause" and when "found" guilty, and yet open the door to summary removal without a trial. However flagrant the shortcomings or misdeeds of the relator may have been, and upon this subject we express no opinion, and assuming that the commissioners had no object except to promote the public welfare, still their action in removing him without a trial was unauthorized and must be set aside as in violation of law.

The order appealed from and the determination of the board of police commissioners should be reversed, with costs in both courts.

CULLEN, Ch. J., HAIGHT, WERNER, WILLARD BARTLETT and CHASE, JJ., concur; HISCOCK, J., concurs in result.

Order reversed, etc.