**JIMENEZ v. JONES, Warden.**
No. 4609.

United States Court of Appeals
First Circuit.
March 11, 1952.

160

Santos P. Amadeo, Rio Piedras, P. R. (Rafael V. Perez-Marchand, Rio Piedras, P. R., on brief), for appellant.

Frank Vizcarrondo Vivas, Asst. Prosecuting Atty., San Juan, P. R. (Victor Gutierrez Franqui, Atty. Gen. of Puerto Rico, and J. Rivera Barreras, Prosecuting Attorney, San Juan, P. R., on brief), for appellee.

Before MAGRUDER, Chief Judge, and MARIS and WOODBURY, Circuit Judges.

MAGRUDER, Chief Judge.

Israel Jiménez Meléndez brings this appeal from an order of the Supreme Court of Puerto Rico entered June 20, 1951, denying an original petition for a writ of habeas corpus. The claim to relief was based upon an allegation that petitioner was illegally restrained in the Insular Penitentiary under a void judgment of the District Court of Puerto Rico, Arecibo Section, entered September 15, 1943, sentencing Jiménez to life imprisonment for the crime of murder in the first degree.

It appears that petitioner was arraigned in the insular district court upon an information charging him with the crime of murder of one Lydia Morales. According to the transcript, after the information was read, the attorney for the accused stated: "The defendant pleads guilty of murder in the second degree." The District Attorney then informed the court that the People of Puerto Rico could not acquiesce in the reduction of the degree of the offense and stood ready "to prove a case of murder in the first degree with all the aggravating circumstances." Whereupon, the trial judge stated: "The situation is that the District Attorney will present his evidence and if the defendant wishes to introduce evidence, let him do so, and let the Jury decide whether it is murder in the first degree or in the second degree." The petition for habeas corpus concedes that "petitioner's attorney acquiesced to have the jury determine whether the petitioner was guilty of murder in the first or in the second degree."

Thereupon the prosecution called one Zenaido Morales, a 14-year-old boy, as a witness. Morales testified that he was present at the scene of the crime, that Lydia was stabbed 34 times and killed by petitioner; but later he said that he had not seen the killing "because it was farther off." At that point the jury and the witness, upon order of the court, withdrew from the courtroom. The District Attorney called the court's attention to a sworn statement which had previously been given by Morales, to the effect that he had seen the accused run after and stab the girl. The District Attorney expressed the suspicion that influence had been exerted upon the witness. Upon the recall of the jury and the witness, the trial court admonished the witness of his obligation to tell the truth and the whole truth and told him that, "If you have testified previously before the Municipal Judge that you saw something and that is true, you must testify it here, and if you lie, you are liable to go to the Reform School. If you come here to omit things and not to say things you saw, which are true, you may go to the Reform School." The District Attorney then resumed the examination of the witness. Morales testified that he was playing at his house with Lydia when the defendant appeared, that defendant seized a dagger and without any provocation or discussion grabbed Lydia; that she then ran and the defendant ran after her with the dagger. The witness still did not say that he had seen the actual killing, but testified that after he saw the girl fleeing he came upon her dead body a little way up the road with "some stabs" in it.

The prosecution then called as witness the doctor who had performed an autopsy upon the body of the dead girl. He testified in detail to 32 dagger wounds in the body, including stabs which entered the lungs and the heart. The prosecution and the defense then rested, and counsel having elected not to argue, the judge charged the jury.

In the charge the jury were told that the defendant in pleading guilty to murder in the second degree "accepted the facts of the information, with the only difference that he said that those facts, as committed, did not amount to murder in the first degree, but rather to murder in the second degree." The legal differences between the two degrees of murder were explained to the jury, and they were instructed to bring in a verdict of murder in the first degree if they were convinced beyond a reasonable doubt, on the evidence as a whole, that the defendant assaulted and killed the girl with the knife, with deliberate aggression and with malice aforethought; that if they were not so convinced beyond a reasonable doubt, they should bring in a verdict of murder in the second degree. It was made clear to the jury that the only thing for them to decide was whether the killing was murder in the first or in the second degree; that "there can be no verdict of acquittal because the defendant has admitted the facts." No exceptions were noted to the charge.

The jury found petitioner guilty of the crime of murder in the first degree. The judge then stated: "The Court, pursuant to the verdict of the Jury, finds you guilty of the crime of murder in the first degree"; and upon indication by counsel that the defendant desired to be sentenced immediately, the judge imposed a sentence of life imprisonment.

So far as appears, petitioner took no appeal from the judgment of conviction rendered by the insular district court in September, 1943. On June 14, 1951, petitioner filed in the Supreme Court of Puerto Rico an original petition for a writ of habeas corpus.

The grounds for relief stated in the petition (omitting one ground apparently abandoned on appeal) were as follows:

(1) That the judgment rendered against petitioner was null and void under the provision of § 310 of the Puerto Rican Code of Criminal Procedure (1935 ed.): "Upon a plea of guilty of a crime distinguished or divided into degrees, the court must, before passing sentence, determine the degree." It is urged that since petitioner entered a plea of murder in the second degree, "the trial judge was under the obligation of hearing evidence to determine the degree of the crime and could not delegate the duty imposed on him by the above mentioned section of determining said degree."

(2) That the determination by the jury of the degree of the crime was null and void in view of § 284 of the Code of Criminal Procedure reading: "Whenever a crime is distinguished into degrees, the jury, if they convict the defendant, must find the degree of the crime of which he is guilty." It is asserted that this section, in conjunction with § 310, carries the implication that the jury is entrusted with the function of determining the degree of the crime only when they convict a defendant tried upon a plea of not guilty.

(3) That the conduct of the trial judge, in admonishing the witness Morales, in the presence of the jury, to tell the truth and the whole truth, "deprived petitioner of the constitutional right to an impartial trial."

(4) That the plea of guilty of murder in the second degree which, according to the transcript, was entered by petitioner's attorney on his behalf, was a nullity in view of the mandatory provision of § 164 of the Code of Criminal Procedure: "A plea of guilty can be entered only by the defendant himself in open court, unless upon information against a corporation, in which case it may be put in by counsel."

In addition, the petition contained the general allegation that all of the foregoing was in violation of the Fifth Amendment to the Federal Constitution and of paragraph 1 of § 2 of the Organic Act, 39 Stat. 951, 48 U.S.C.A. § 737.

On June 20, 1951, the Supreme Court of Puerto Rico, without explanatory opinion, entered an order reciting that the petition for a writ of habeas corpus is "hereby de-

nied." The present appeal is from this order.

Despite the contention of appellee to the contrary, we have no doubt that we have a technical appellate jurisdiction in this case.

■ Under 28 U.S.C. § 1293, this court has jurisdiction of appeals from all "final decisions of the supreme court of Puerto Rico * * * in all habeas corpus proceedings * * *." It is not necessary that appeals in such cases should present a federal question; though in so far as questions of local Puerto Rican law are concerned, this court in the exercise of its appellate jurisdiction may not reverse a judgment of the Supreme Court of Puerto Rico unless such judgment is deemed to be "inescapably wrong" or "patently erroneous". Such limiting rule laid down for our guidance by the Supreme Court of the United States is explained in De Castro v. Board of Commissioners, 1944, 322 U.S. 451, 64 S.Ct. 1121, 88 L.Ed. 1384, and cases cited therein.

■ Appellee's argument, on the jurisdictional point, is that the order of the Supreme Court of Puerto Rico refusing to issue the writ of habeas corpus "without entering into the merits of the petition" is not a "final decision" within the meaning of 28 U.S.C. § 1293. Cf. Camacho v. District Court of Guayama, 69 P.R.R. 689, 692 (1949). We do not agree. Section 48 of the Organic Act, 48 U.S.C.A. § 872, provides that the Insular Supreme Court and the district courts of Puerto Rico and the respective judges thereof "may grant writs of habeas corpus in all cases in which the same are grantable by the judges of the district courts of the United States * * *." Section 471 of the Puerto Rican Code of Criminal Procedure also provides that the "writ of habeas corpus may be granted by the Supreme Court [of Puerto Rico], or any justice thereof," or by an appropriate insular district court or a judge thereof. Presentation of an original petition for a writ of habeas corpus to the Supreme Court of Puerto Rico is the institution of a suit. And if the Supreme Court of Puerto Rico, without issuing the writ, enters an order denying the petition, that is a "final decision" disposing of such suit, so far as the

Supreme Court of Puerto Rico is concerned. See Ex parte Quirin, 1942, 317 U.S. 1, 24, 63 S.Ct. 1, 87 L.Ed. 3. This is so whether the Supreme Court of Puerto Rico intended by such final decision to dispose of the case on the merits, or on some procedural ground not involving the merits.

Though we thus have a technical appellate jurisdiction, there may be a question as to what we ought to review, since the court below did not indicate its reasons for entering the order denying the petition.

So far as we can see, no substantial federal question is presented to us on this appeal.

Conceivably the Supreme Court of Puerto Rico may have meant to deny the writ on the ground that the questions presented were not appropriate to be raised on a petition for habeas corpus but should have been raised on appeal from the original judgment of conviction. See § 483, Code of Criminal Procedure; Ex parte Chico, 8 P.R.R. 273 (1905); Sunal v. Large, 1947, 332 U.S. 174, 67 S.Ct. 1588, 91 L.Ed. 1982; Daniels v. Allen, 4 Cir., 1951, 192 F.2d 763.

Conceivably also, the court below, in denying the writ, may have intended to rule adversely upon petitioner's points of substantive law involving the interpretation and application of §§ 164, 284 and 310 of the Code of Criminal Procedure.

But it seems to us altogether unlikely that the court below, in denying the writ without benefit of briefs or oral argument by counsel and without filing an opinion, intended to determine any of the foregoing questions of substantive law—questions which, so far as we are informed, that court has never had occasion to pass upon in previous cases. See the discussion by the court in Algarín v. District Court of Humacao, 59 P.R.R. 848 (1942), as to the significance of the phrase "no ha lugar", which is the Spanish version of the simple order in the case at bar denying the petition for habeas corpus. The discussion there had particular reference to a petition for a writ of certiorari, but is broadly applicable, we take it, to petitions to the Supreme Court of Puerto Rico for other extraordinary remedies, including the writ of habeas corpus, which the court may grant

or withhold in the exercise of a sound judicial discretion. See also, Camacho v. District Court of Guayama, 69 P.R.R. 689, 692 (1949).

 What is more likely, and what we assume to be the fact, is that the Supreme Court of Puerto Rico, as a matter of discretion, declined to take upon itself the burden of entertaining, and disposing of on the merits, this original petition for a writ of habeas corpus, when there was no showing that the rights of petitioner could not be adequately safeguarded by the filing of a similar petition in an appropriate insular district court. In previous cases the court below has given expression to such a rule of practice. Thus, in Ex parte Sánchez, 45 P.R.R. 38, 39 (1933), the court, referring to its original jurisdiction to entertain a habeas corpus proceeding, said: "We wish to make it clear that this Court will not make use of its discretion to exercise the original jurisdiction conferred upon it by law, unless the circumstances be such as to make its intervention necessary." Again, in Ex parte Guido Carreras, 39 P.R.R. 441, 442 (1929), the court said: "More and more we have become convinced that as long as a district court is available lawyers ought to refrain from presenting a petition of habeas corpus to the judges of this court, either individually or collectively. Not only are the judges of the district courts in a better situation to summon witnesses and hear them, but the decision finally rendered can be reviewed by a full court." We have no doubt that the Supreme Court of Puerto Rico has full authority to adopt and apply such a rule of practice in the disposition of original petitions for writs of habeas corpus; it is no different in substance from what the Supreme Court of the United States has done. The only question which could be raised before us upon appeal from the refusal of the Supreme Court of Puerto Rico to entertain such an original petition is whether the denial of relief, under the particular circumstances presented, was a clear abuse of discretion. Certainly we cannot say that in the case at bar.

Our necessary affirmance of the order below is of course without prejudice to the right of petitioner to file a similar petition for a writ of habeas corpus in an appropriate insular district court. The action of the district court in disposing of such new petition will be reviewable by the Supreme Court of Puerto Rico on appeal, or if for technical reasons in certain cases an appeal may not lie (cf. Ex parte López, 15 P.R.R. 57 (1909)), then apparently the review may be by certiorari. See Pérez v. District Court of San Juan, 69 P.R.R. 4, 15, 17 (1948). Or if we are mistaken in this, and an order of the district court denying relief is not reviewable in any way by the Supreme Court of Puerto Rico, then the way would be clear for petitioner to file a new original petition for habeas corpus in the Supreme Court of Puerto Rico, relief in the district court having proved unavailing.

The judgment of the Supreme Court of Puerto Rico is affirmed.