DONALD LEROY CHAMBERLAIN, Petitioner, v. GERARDO DELGADO, WARDEN OF THE PUERTO RICO STATE PENITENTIARY, Respondent.

No. 953 (147). Submitted September 26, 1960.—Decided October 25, 1960.

*Raúl A. Feliciano* for petitioner.

MR. JUSTICE SALDAÑA delivered the opinion of the Court.

While the Supreme Court was in session and all its justices able, Donald Leroy Chamberlain filed a petition for habeas

corpus before the subscribing justice individually.[1] He alleged that the sentence of five to twelve years in the penitentiary imposed on him on May 8, 1959 by the Superior Court, San Juan Part, in criminal cases G-58-614, G-58-615, and M-58-500, is illegal and consequently his commitment in the Puerto Rico State Penitentiary is also illegal. He stated the following grounds which we deem advisable to copy here literally:

"3—That on August 30, 1959, that is, the day following his arrest, the two (2) principal newspapers of Puerto Rico, 'El Mundo' and 'El Imparcial' published in big headlines the news of his arrest and subsequent news on the following days until the date of the trial.

"4—That the manner in which this news was published by the newspapers 'El Mundo' and 'El Imparcial' resulted in publicity exceedingly adverse and harmful to the right of the defendant to a fair and impartial trial.

"5—That said trial was held subsequently to the adverse publicity received by the petitioner but still when his case was affected by the adverse publicity depriving him of a fair and impartial trial.

"6—That the effect of this adverse publicity on petitioner's right to a fair and impartial trial had a marked influence on the result of the trial as well as on the severity of the sentence. This was due to the fact that the trial commenced in the Superior Court of San Juan, on April 13, 1959, that is, 240 days after defendant's arrest.

"7—That in the criminal case mentioned in the first paragraph the effect of the excessive adverse publicity received by the defendant shortly before the commencement of the trial was not cured, since there was no change of venue nor did the instructions given by the judge who proceeded (sic) the trial cure in a substantial way the serious harm done him by such

---

[1] The petition was filed on September 9, 1960. As it is known, Justices Pérez Pimentel and Belaval devoted all their time to the bar examinations which commenced on September 8 and ended the 28th of that month. Only for this reason have they been precluded from participating in the judicial work of the Supreme Court during the aforementioned period.

adverse publicity, nor was the trial continued so as to cure the effect of the adverse publicity.

"8—The newspaper 'El Mundo' moved by an apparent journalistic zeal charged the defendant with the robbery of the Bank of Nova Scotia, which had occurred shortly before the defendant committed the crime with which he was charged. To that effect see the cartoon in 'El Mundo' of August 30, 1959, published on the front page with the following caption:

FILARDI SCORED:

"Now it can be revealed that it was Carmelo Filardi who made the drawing of the man in the hold-up of the Bank of Nova Scotia. This drawing was made at the request of the Police Department. If the reader compares the drawing with the above photo he will realize that it is a good guess on the part of Filardi.

"The photo mentioned in the cartoon caption is a photograph of Donald Leroy Chamberlain, the petitioner charged with attempt to commit robbery and other crimes.

"In the edition of Wednesday, September 3, 1958, the newspaper 'El Mundo' published the following title with a report: 'THEY EXPECT TO CONNECT CHAMBERLAIN WITH THE NOVA SCOTIA ROBBERY.'

"The accounts contained in these examples quoted from the newspaper 'El Mundo' as well as in other sources of information of the whole island were extremely prejudicial to defendant's right to a fair and impartial trial, since the defendant petitioner has never been and probably will never be charged with the hold-up of the Bank of Nova Scotia.

"9—That in addition to the grounds stated in the preceding paragraphs the defendant petitioner did not have the proper assistance of counsel guaranteed by the Constitution of the United States of America and the Constitution of Puerto Rico, since his attorneys did not take the necessary legal steps to prevent such adverse publicity from affecting him in the manner which it did, since the trial was held in the city of San Juan, Puerto Rico, 240 days after the arrest and very shortly before as will be seen by the accounts of the newspapers that adverse publicity was still having effect depriving the defendant petitioner of a fair and impartial trial.

"10—That the general final list prepared by the Jury Commissioners to select definitively the jury which acted in the

Superior Court, San Juan Part, on the date of petitioner's trial, did not include persons born in the United States residing in Puerto Rico, arbitrarily and to the prejudice of petitioner's rights. That continentals being American citizens and residents of Puerto Rico, and there being among them a large number from which to choose in Puerto Rico, and many of them being familiar with the Spanish language, they were not even considered to form part of the jury of the Superior Court, San Juan Part.

"11—That this action of the Jury Commissioner prejudices substantially the rights of the defendant, all of which is in violation of the Constitution of Puerto Rico and of the United States of America.

"12—That with regard to the question of publicity raised herein, the question is discussed in *People* v. *Fournier*, 77 P.R.R. 208, but said case is distinguishable from the present one because the facts are different and in our opinion the question of publicity raised in *People* v. *Fournier, supra,* was decided on the basis of a dictum, since it was not taken in consideration to decide said case."

It is plain that this petition for habeas corpus contains no allegation whatever which justifies its being addressed to a specific Justice of the Supreme Court to obtain the writ, while said Court is in ordinary judicial session. This case is of no such special or exceptional character as to warrant the immediate intervention of one of the Supreme Court Justices in this habeas corpus proceeding. On the other hand, it appears affirmatively from the petition that this is an ordinary case, that resort may be easily had to the Supreme Court and that its seven justices should intervene at the same time in a body as they regularly decide all the appeals. Therefore, after analyzing the provisions of the applicable law, the subscribing justice reached the conclusion that the habeas corpus petition should be referred to the Court in full. He did so, and on September 15, 1960, the Court entered the following order in the case "considering that no sufficient and adequate grounds are stated, so that we may, in the exercise of our original jurisdiction, proceed to take cognizance of the

case, we decide that we must, and do hereby, dismiss the petition filed." Since this decision was unanimous, it is obvious that the subscribing justice participated in the consideration of the petition by the whole court and that he agreed with the other justices in denying the petition filed. However, in a motion addressed to the subscribing justice personally, the petitioner insists now that "pursuant to the Code of Criminal Procedure in force in Puerto Rico . . . where a petition for habeas corpus is filed, any court or judge authorized to grant the writ, *must*, if it appear that the writ ought to issue, grant the same without delay." Hence, he concludes that, the petition for habeas corpus having been filed before a specific justice of the Supreme Court, the latter had "the ministerial duty to issue the writ if it appear that the writ ought to issue." In other words, he alleges that the subscribing justice is obliged to take action in the case either denying or issuing the writ, whereby in his prayer he concludes by saying "the petitioner respectfully prays that you enter an order in the terms which you deem convenient in furtherance of justice, so that the petitioner may take whatever action . . . is proper in support of his right." Besides, in a motion addressed to the Court, the petitioner alleges that our order of September 15, 1960, in which we dismissed the petition filed, is void because "this petition having been filed in the Supreme Court but before Mr. Justice Lino Saldaña, the full Court does not have authority at law to dismiss the petition" and because "the petitioner does not wish to submit to the jurisdiction of the full Court, but rather to that of the justice to whom the petition for the writ was presented."

 Let us define the question raised in order to reason without confusion. The present Code of Criminal Procedure in its § 471 states the courts and judges who are authorized to grant the writ of habeas corpus. 34 L.P.R.A. § 1743. It is a well-known fact that the full Court, as well as any of its justices, may, pursuant to the said section, grant the writ

of habeas corpus upon petition by any person who alleges to be illegally restrained of his liberty in Puerto Rico.[2] On the other hand, § 472 of that Code adds that: "Any court or judge authorized to grant the writ, to whom a petition therefor is presented, must, if it appear that the writ ought to issue, grant the same without delay." 34 L.P.R.A. § 1744. Thus, the point raised by the petitioner is the following: Does § 472 prevent a petition for habeas corpus presented to one of its justices from being referred to the full court? Petitioner's contention is in the affirmative. He alleges that in such case the Supreme Court justice to whom the petition is addressed is always bound to decide the petition individually either by denying it or issuing the writ. In our opinion petitioner's contention is wholly devoid of merit.

 Our Constitution and our laws grant jurisdiction to the Supreme Court and to each one of its justices to take cognizance of a petition for habeas corpus for the sole purpose of granting the fullest possible protection to every person that is detained or imprisoned illegally in Puerto Rico. This does not mean that by making use of that jurisdiction the Court or one of its justices can be obliged capriciously to entertain an original petition for habeas corpus. Because, beyond doubt, it is essential to reduce to the minimum the number of cases where the Supreme Court intervenes as court of first instance. Its essential function in the administration of justice in Puerto Rico is to serve as instrument of review or of appeal. Therefore, to carry out that work adequately

---

[2] The Puerto Rican Federal Relations Act also provides "That the Supreme and District Courts of Puerto Rico and the respective judges thereof may grant writs of habeas corpus in all cases in which the same are grantable by the judges of the District Courts of the United States." 64 Stat. 319; 1–4 L.P.R.A. at 170. This provision corresponds to § 48 of the Organic Act of 1917, 39 Stat. 967, as subsequently amended. See 48 U.S.C.A. § 872. The authority of the Supreme Court and of any of its justices to hear in the first instance petitions for habeas corpus was sanctioned by § 5 of Art. V of the Constitution of the Commonwealth. 1–4 L.P.R.A. at 198. See also § 7 of the Judiciary Act of 1952. 4 L.P.R.A. § 35.

in its quantitative aspect as well as in its requirement of quality, the Supreme Court has been forced to limit strictly the exercise of its original jurisdiction. It has specifically laid down the rule that it will not make use of its authority to intervene originally in habeas corpus proceedings "unless the circumstances be such as to make its intervention necessary." That is, unless the petitioner's rights cannot be adequately protected through the filing of a petition for habeas corpus in another competent court, the Supreme Court will always reject the original petition flatly with a "motion is denied." See, for example, *Burgos* v. *Warden*, 76 P.R.R. 240 (1954). *Cf.* also *Jiménez* v. *Jones*, 195 F.2d 159 (1st Cir. 1952) and *Palou Márquez* v. *Ramírez*, 264 F.2d 61 (1st Cir. 1959).

Of course, none of the provisions of § 472 of the Code of Criminal Procedure preclude the adoption and application of this procedural standard for disposing of original petitions of habeas corpus presented to the full Court. Although said section provides that the court or judge authorized to grant the writ *"must . . . grant the same without delay,"* it is no less certain that this obligation only exists *"if it appear that the writ ought to issue."* The original jurisdiction in cases of habeas corpus does not constitute a strait jacket, but rather a means to do justice in cases of extraordinary circumstances. Logically, identical principle should govern when dealing with jurisdiction granted by law individually to the justices of the Court on habeas corpus. It is so recognized by our firm and well-established case law. Let us examine some examples.

More than half a century ago, in *Ex parte Aybar*, 14 P.R.R. 549 (1908), the Supreme Court decided that an application for habeas corpus filed with one of its justices could be referred by the latter for decision to the judge of the district where the petitioner was imprisoned. Although the

writ was issued therein for the hearing to be held in another court, the basic principle was established that in this matter the judge must always exercise "discretion ... not of an arbitrary but of a sound and prudent character, to meet the ends of justice without impairing the rights of anyone." That is why we stated that the petitioner in that case being imprisoned in Mayagüez, the referring of the petition of habeas corpus to the judge of this district was valid "since no harm was done the defendant who, on the contrary, had another remedy of appeal if his application had been denied." Subsequently, in *Ex parte Guido Carreras*, 39 P.R.R. 441 (1929), we sanctioned this logical and wise doctrine upon stating formally: "More and more we have become convinced that as long as a district court is available lawyers ought to refrain from presenting a petition of habeas corpus to the judges of this court, either individually or collectively. Not only are the judges of the district courts in a better situation to summon witnesses and hear them, but the decision finally rendered can be reviewed by a full court. It is much more advantageous to the jurisprudence of this court that we should have the cooperation of all the judges who compose it and a doubt of one of them can frequently be resolved ..." (at 442). It should be noted that in making these statements the Court was referring specifically to an original petition for habeas corpus filed with one of its justices. Therefore, with full knowledge of its significance, the full court adopted as its own the rule established by Mr. Chief Justice Del Toro in *Ex parte Alvaro Salvá*, decided on March 15, 1929. "Of course there are exceptional cases which justify the power granted to each justice but we wish to call the attention of the bar to the matter. If there is any circumstance which requires the immediate intervention of one of the justices of the Supreme Court, he should be called upon to act, but in ordinary cases the procedure used should be such

as to leave all the justices of the Court free to consider the appeal if it should be necessary to file one." [3]

These principles were reaffirmed in *Ex parte Sánchez*, 45 P.R.R. 38 (1933). Speaking through Mr. Justice Córdova Dávila, the Court therein denied a petition for the issuance of a writ of habeas corpus and said: "We wish to make it clear that this Court will not make use of its discretion to exercise the original jurisdiction conferred upon it by law, unless the circumstances be such as to make its intervention necessary." That is, what was previously a warning or a rule of "good practice" now becomes a peremptory and coercive rule that, by necessary implication, refers to the full Court as well as to each one of its justices. Since the writ requested by the petitioner had already been issued, the Court considered and decided the case on the merits. However, since the pronouncement of such a conclusive statement concerning the juridical principle which must be followed in these cases, the longstanding practice of the Supreme Court has been to reject a petition for habeas corpus when it does not adduce adequate and sufficient reasons to invoke its original jurisdiction. Actually, this does not constitute anything new for the practicing attorneys in our bar. And none of them are unaware either that, referring to this settled practice, the Court of Appeals has expressly stated that "We have no doubt that the Supreme Court of Puerto Rico has full authority to adopt and apply such a rule of practice in the disposition of original petitions for writs of habeas corpus; it is no different in substance from what the Supreme Court of the United States has done." *Jiménez* v. *Jones, supra* at 163. [4] Likewise, leaving aside the petitions for habeas corpus

---

[3] The opinion delivered by Mr. Chief Justice Del Toro in his individual character has not been published *in extenso*. It forms part of record No. 3814 (Criminal) of the year 1929, which is kept in the Secretary's Office of this Court. *Cf. Ex parte Salvá*, 41 P.R.R. 27 (1930).

[4] Pursuant to the provisions of Rule 31 (5) of the Rules of the Supreme Court of the United States, the original petition for habeas corpus that is filed in said Court must state the reasons why the petitioner did not

before a justice as "acting judge," the practice of our bar during the last twenty years has been to refrain in ordinary cases from filing petitions for habeas corpus addressed to one of the justices of the Supreme Court individually. As may be deduced from the preceding statements, this is done in obedience to the patterns established by the Supreme Court in its decisions. There is a logical presumption that each justice, in exercising his individual authority to intervene in habeas corpus proceedings, shall follow the patterns fixed by the Court.

█ Therefore, a Supreme Court Justice to whom a petition for habeas corpus is addressed individually is not necessarily obliged to decide it by himself, granting or denying the writ. Obviously, if it is not shown that there are adequate and sufficient reasons for not having filed it originally before the Superior Court, he may so indicate and dispose of the motion for a writ of habeas corpus by merely stating "petition denied." In such case his action is tantamount to referring the petitioner to the relief he has in the Superior Court. That is, he indicates to the petitioner that he must first resort to a Superior Court Judge and there present his petition for habeas corpus. In the exercise of his discretion he may also refer the petition for habeas corpus to the full Court for the latter to make the determination which it deems proper, provided the Court is in session and that its justices collectively accept to intervene in the case without delay. It is almost needless to say that in such case the petition for habeas corpus which was addressed to one of its justices individually, can be considered as having been addressed to the Court in full. It has thus been done in the past, without anyone having ever doubted the authority of

---

resort first to the Federal District Court. Furthermore, the case must be exceptional in order for the Supreme Court to be invoked in first instance. *Cf. Ex parte Hudgings,* 249 U.S. 378 (1919) and *Ex parte Grossman,* 267 U.S. 87 (1925) with *Ex parte Abernathy,* 320 U.S. 219 (1943). Similar rules exist in various Courts of Appeals. See, for example, *In re Gersing,* 145 F.2d 481 (D.C. Cir. 1944).

the Court to do so. *Cf. Espinosa* v. *Ramírez*, 71 P.R.R. 10, 14 (1950). And the practice followed in other courts of last resort is similar to ours. In *Ex parte Clarke*, 100 U.S. 399, 403 (1879), the United States Supreme Court decided a question identical to the one at bar. Based on the traditional practice of English judges said Court determined that it could consider in full a petition for habeas corpus addressed to one of its justices individually. Since then, as indicated by Stern and Grossman, "when application [for habeas corpus] is made to an individual Supreme Court Justice, the usual practice is for him to refer it to the full Court." Supreme Court Practice (2d ed. 1954), 284. *Cf.* Hart and Wechsler, The Federal Courts and the Federal System 1243-1247 (1953).

With that no harm is done the petitioner. On the other hand many and serious inconveniences are averted. In the first place, if the justice to whom the petition is addressed intervenes in the habeas corpus proceeding in his individual character he shall have to abstain from participating later in any subsequent proceeding whether on appeal or upon filing the same petition in the Supreme Court.[5] Such compulsory disqualification would undoubtedly result in serious prejudice and detriment to the appellate functions of the Court. In the second place, it is incompatible with the most elementary principle of judicial organization that a petitioner be permitted "to choose," at his will and fancy, any justice of the Supreme Court to hear and decide a petition for habeas corpus as judge of first instance. Would it be possible then to file new and successive petitions for habeas corpus before each

---

[5] The decision of any justice in a petition for habeas corpus, if the writ has been issued and served, is appealable to the Supreme Court upon request of any of the parties who is aggrieved. *Ex parte Lastra*, 56 P.R.R. 534 (1940) and *Espinosa* v. *Ramírez*, 71 P.R.R. 10 (1950). On the other hand, as is well-known, an order denying a petition for habeas corpus does not preclude the petitioner from filing another petition on the same grounds before any competent judge or court. *Ramos* v. *Rivera*, 68 P.R.R. 509 (1948).

one of the seven justices that make up the Court? No justification can be conceived for such an undesirable and dangerous situation. In the third place, if the petition for habeas corpus raises meritorious questions, the normal and adequate course is to submit it to the decision of the full Court. In principle, the existence of a collegiate court of last resort is only justified because it delivers judgments that are *collective;* this means: that they are obtained by a process of deliberation and discussion among several justices and they reflect juridical principles whose wisdom is superior to any principle that each justice could reach alone through his individual effort. The Supreme Court of Puerto Rico was created and exists for that purpose. Of course, each one of its justices should only attend to these collective functions, unless his individual intervention is necessary and urgent to protect the rights of a person illegally detained or imprisoned.[6] In the case at bar, as previously noted, it arises

[6] Applying the provisions of the Federal Judicial Code which are very similar to ours, the United States Supreme Court and several Courts of Appeals have reached similar conclusions. See 28 U.S.C. (1940) § 455 and 28 U.S.C. §§ 2241(b) and 2243; *Ex parte Clarke,* 100 U.S. 399, 403 (1879); *Ex parte Jefferson,* 106 F.2d 471 (9th Cir.); *Sweetney* v. *Johnston,* 121 F.2d 445 (9th Cir.); *United States ex rel. Bernstein* v. *Hill,* 71 F.2d 159 (3d Cir.); *Burall* v. *Johnston,* 146 F.2d 230 (9th Cir.); *Brosius* v. *Botkins,* 110 F.2d 49 (D.C. Cir.). *Cf. Burall* v. *Johnston,* 53 F. Supp. 126; *Bowen* v. *Johnston,* 55 F. Supp. 340 and *Remas* v. *Squier,* 56 F. Supp. 344. If we analyze this case law, we shall see that it upholds the following principle: a justice of the Supreme Court of the United States or of a Court of Appeals to whom a petition for habeas corpus is addressed in his individual character may limit himself in the exercise of his discretion to refer the petition to a full Court or to a court of first instance when there are no special circumstances requiring his immediate intervention. Otherwise, the same standard has been applied when it concerns a petition for bail addressed to a justice of the United States Supreme Court. For example, as indicated in Robertson and Kirkham, *Jurisdiction of the Supreme Court of the United States* (ed. by Wolfson and Kurland, 1951), Mr. Justice Murphy referred to the full Court the application for bail filed with him in the case of *United States ex rel. Doss* v. *Lindsley,* No. 470 O.T. 1945 (p. 920, § 442, footnote 7). In 1951, Mr. Justice Douglas did likewise with another application for bail and an alternative application for habeas corpus as interim relief. See *Stack* v. *Boyle,* 342 U.S. 1, 4 (1951). This is so notwithstanding the fact that each

affirmatively from the petition that we are dealing with an ordinary case; that without prejudice or impairment of his rights, petitioner may resort promptly to the Supreme Court; and that nothing precludes the seven justices of this Court from intervening jointly in the case as is the standard practice in every collegiate court.

■ Consequences of all this: *first*, that having referred the petition for habeas corpus filed on September 9, 1960 to the full Court conforms to the juridical standards in force; and *secondly*, that our authority to consider and decide the petition as if it had been presented to the full Court and not to one of its justices personally is unquestionable. On the other hand, after examining the said petition for habeas corpus it is easily established that neither expressly nor impliedly it states adequate grounds on which, in the exercise of our original jurisdiction, we may take cognizance of the case. Thus, our order of September 15, 1960, where we stated that the petition filed did not lie and indicated to the petitioner that he should resort to the Superior Court, is entirely correct.

■ Now, subsequently—in two motions filed on September 16 and 22 of 1960—petitioner's counsel alleged an additional and significant fact which was not contained in the original petition for habeas corpus. It is adduced for the first time in these motions that: ". . . *the criminal cases G-58-614, G-58-615 and M-58-500 being on appeal before this honorable Court*, it is the Supreme Court or the Justice to whom the petition is addressed who has exclusive jurisdiction to grant the writ of habeas corpus, if it appears that said writ should issue." [7] (Italics ours.) It is well known

___

one of the justices of the United States Supreme Court is authorized to admit bail pending an appeal or certiorari in a criminal case. *Cf. United States ex rel. Norris* v. *Swope*, 96 L. Ed. 1382 (Appendix); *D'Aquino* v. *United States*, 180 F.2d 271; and the cases cited in 1 L. Ed. 2d 1564–1580.

[7] It should be noted that the notice of appeal in the criminal cases should have been filed in the Superior Court. Furthermore, there is no record in the office of the secretary of this Court that the appeal taken

that every petition for habeas corpus should be signed and verified ". . . by the party for whose relief it is intended or by some person in his behalf." Section 470 of the Code of Criminal Procedure, 1935; 34 L.P.R.A. § 1742. See *Ex parte Cintrón*, 5 P.R.R. 87 (1904); *Ex parte Delgado*, 12 P.R.R. 258 (1907). *Cf. Ex parte Fagot*, 33 P.R.R. 561 (1924). Hence, strictly speaking, the petition for habeas corpus sworn by petitioner Chamberlain should not be amended by a simple motion signed by his attorney, without more. This notwithstanding, because of the nature of the pleading made, we believe that the question here should be overlooked and that it is incumbent on the full Court to consider the petition for habeas corpus thus "amended." We now turn to consider it.

Apparently all the questions raised by the petitioner in his amended petition can and should be raised in the appeal which he filed from the judgments rendered against him, which appeal is today pending in this Court. It seems undeniable that, in the absence of exceptional circumstances, before resorting to the habeas corpus proceeding which is a collateral attack against the judgments rendered against him, the prisoner must exhaust every remedy within his reach by means of a direct challenge of said judgments, by way of appeal. See *Ex parte Bird*, 5 P.R.R. 241 (1904); *Ex parte Díaz, alias Martillo*, 7 P.R.R. 153 (1904); *Sunal* v. *Large*, 332 U.S. 174 (1947); *Larson* v. *United States*, 275 F.2d 673 (5th Cir. 1960); and *Walker* v. *Chitty*, 112 F.2d 79 (9th Cir. 1940). On the other hand, in the event that the petitioner may resort to habeas corpus while his appeal is pending, there is no apparent reason for the Superior Court to be precluded from intervening in the proceeding after having been granted permission therefor by this Court. *Cf. Ex parte Hernández*, 54 P.R.R. 396 and 54 P.R.R. 470 (1939);

---

by Chamberlain in those cases has been perfected. Therefore, it is obvious that we could not have any notice of the facts stated in the motions dated September 16 and 22 of 1960.

*Fournier* v. *Warden,* 80 P.R.R. 254 (1958), 269 F.2d 26 (1st Cir. 1959); 39 C.J.S., Habeas Corpus, § 53. Compare also, by analogy, Rule 49.2 of the Rules of Civil Procedure (1958), 7 Moore, Federal Practice, 2d ed. 334 *et seq.* However, if we read the allegations of fact contained in the petition with utmost liberality, perhaps we might say that they contain a trace of ambiguity and indetermination concerning the point of whether there exist extraordinary circumstances permitting the petitioner to resort to the habeas corpus while his appeal is pending. Besides, it is not advisable to decide these two questions of law on the propriety of the remedy, without hearing the parties and without receiving the aid of their briefs. Our authorities on this matter run on quite indefinite lines and, in any event, they do not make a careful analysis of the applicable juridical principles.

Consequently, our order denying the petition will be set aside and a hearing will be held to hear the petitioner and the respondent on the two preliminary questions of law above-indicated, to wit: (1) whether there exist extraordinary circumstances in this case permitting the petitioner to resort to the habeas corpus proceeding notwithstanding the fact that he filed an appeal against the judgment whose validity he challenges in the habeas corpus, and (2) if so, whether there are reasons precluding the Superior Court from intervening in the habeas corpus proceeding after having been granted permission therefor by this Court.