### CASANOVA v. LATONI.
### No. 3996.

Circuit Court of Appeals, First Circuit.

Feb. 16, 1945.

Benjamin F. Karpay, of New York City, Abelardo Casanova Prats, of San Juan, Puerto Rico, Gilberto Concepsion, of Santura, Puerto Rico, and Rafael R. Fuertes, San Juan, Puerto Rico, for appellant.

L. E. Dubon, Dubon & Ochoteco, and Otero Suro & Otero Suro, all of San Juan, Puerto Rico, for appellee.

Before MAHONEY and WOODBURY, Circuit Judges, and WYZANSKI, District Judge, sitting.

MAHONEY, Circuit Judge.

This action was originally brought in 1933 in the District Court of San Juan, Puerto Rico, by Modesta Concepcion Cosme on behalf of her three minor children,[1] requesting the annulment of a mortgage foreclosure proceeding brought by the defendant against said children.

The circumstances out of which this controversy arose are as follows: Joaquin Padin Martinez died April 30, 1929, and by his will his three minor natural chil-

---

[1] On appeal to this court Ursula Casanova has been substituted for Modesta Concepcion Cosme.

dren were named as the sole heirs of his estate and Manuel Garcia Lago was named executor and legal guardian or tutor of the children. Garcia Lago filed judicial administration proceedings on June 5, 1929.

At the time of his death the testator owned two houses in San Juan, each subject to a mortgage of $4,000 executed in favor of one Encarnacion Aboy. The mortgage having matured and the children not otherwise being able to avoid foreclosure, on December 24, 1930, Garcia Lago sought permission of the district court to borrow $8,500 from the defendant for the purpose of paying Mrs. Aboy. That authorization was granted, and on December 30th Garcia Lago executed a mortgage in favor of the defendant to secure the loan and interest. In May, 1932, the defendant brought foreclosure proceedings and made demand on the then tutor and minors personally. Since the mortgagors could not make payment the court ordered the properties sold at public auction. The defendant bought them in for $9,010, and on August 6, 1932, he received a judicial deed from the marshal of the court.

The plaintiffs sought to annul the appointment of the testamentary tutor, the mortgage executed by him in favor of the defendant, the foreclosure proceeding brought by the latter, and to recover the accrued rents from the date the defendant acquired the properties and costs and attorney's fees. The defendant requested the dismissal of the complaint and filed a counterclaim for $13,021.12 in the event that the complaint should be sustained.

The district court sustained the validity of the appointment of the testamentary tutor and the execution of the mortgage in favor of the defendant, annulled the foreclosure proceedings because the mother of the minors should have been made a party defendant and served with process,

dismissed the claim for the amount of rents received, and upheld the defendant's counterclaim in the amount of $12,171.22.

The Supreme Court of Puerto Rico held that the appointment of the testamentary tutor was invalid as the surviving mother[2] acquired by operation of law the patria potestas over her children and the right to administer their property, but that the appointment of Garcia Lago as executor had not been impeached since Modesta Concepcion Cosme had expressly acquiesced in the administration of the properties by Garcia Lago, "because she deemed it beneficial to the interest of the minors by reason of the intimate knowledge that he had of the properties of the estate". The Supreme Court therefore upheld the judgment of the district court that the execution of the mortgage in favor of the defendant was properly made, but remanded the case to the trial court with instructions to take evidence with regard to the claim for rents due the plaintiffs. An appeal from that judgment to this court was dismissed as premature since the judgment of the Supreme Court was not final. Cosme v. Marquez, 1 Cir.1938, 94 F.2d 908.

Upon remand the district court found that the defendant had received a total of $8,012.38 and spent a total of $3,485.77 for collection charges, water, cleaning, repairs, bonds returned, light, actions for unlawful detainer by tenants, taxes and insurance. It refused to allow the defendant the right to deduct $284.10 paid for insurance against loss by hurricane and fire and ordered the defendant to pay the plaintiffs the net amount of $4810.71. Under the cross-complaint the plaintiffs were ordered to pay the defendant the amount of $12,171.22.[3] The Supreme Court affirmed, and the plaintiffs have appealed.

On May 9, 1930, the district court accepted Garcia Lago's resignation as execu-

---

[2] The will of Martinez provides: "and although by operation of law the natural mother of the minors, the aforesaid Modesta Concepcion Cosme, has the patria potestas over them, in defense of the welfare and education of my children I have deemed it convenient to make the appointment of tutor just made, for the reason that the said mother has not lived with the children for a long time and has abandoned them and because she is a very ignorant woman, and if she were allowed to assume the administration of the properties that I am leaving to my children the latter would be subject to all sorts of deprivations and to witness improper acts."

Modesta Cosme's testimony was to the effect that she left Padin because of "incongeniality" and that after about six months she began to live with another man to whom she bore several children.

The Supreme Court took the view that under section 174 of the Civil Code the legislature did not intend to authorize one spouse to deprive the other of the rights inherent in the patria potestas.

[3] Mortgage principal $8,500; interest $510; taxes $661.22; repairs $2,500; Total $12,171.22.

tor and administrator and appointed the American Colonial Trust Company as administrator in his place, but refused to accept his resignation as guardian of the minors. Before the Supreme Court the appellants urged that Garcia Lago was acting in his capacity as tutor when executing the mortgage in favor of the defendant since he had already resigned as executor. That court noted that the mortgage deed did not appear in the evidence and said:

"As the appellants have not placed us in such a situation that we might be able to determine the capacity under which Manuel Garcia Lago was acting in executing the mortgage deed of December 30, 1930, the documentary evidence presented by the defendant tending to show that said gentleman had been expressly authorized to execute said deed by the district court, by order of December 24 of the same year, and as it was not alleged or shown that such authorization had been revoked or limited in any manner, we must presume that when Manuel Garcia Lago executed said deed he was acting in accordance with and within the scope of authorization granted to him by the district court, in order to contract a loan which said court considered as useful and necessary for the protection of the interests of the minors."

▮▮▮ Before this court the appellants contend that since Modesta Concepcion Cosme had the patria potestas over her children and the Supreme Court has held that Padin Martinez had no right to appoint Garcia Lago tutor or guardian, the latter had no legal right to request judicial authorization on December 24th as the district court never had jurisdiction over the minors in such authorization proceedings. From the evidence it appears that the record in that proceeding showed on its face that Garcia Lago was acting in his capacity as testamentary tutor or guardian, that the mother was the nearest relative of the minors, and that the court granted Garcia Lago the authorization in his capacity as tutor. Sections 159 and 212(5) of the Civil Code provide that parents exercising rights of patria potestas

and tutors cannot encumber real estate belonging to minors without previous authorization of the court. We are satisfied that the proceedings in question met all the requirements of the applicable statutes [4] relative to the contents of the petition, hearing and proof of the same. The only place these proceedings might appear even remotely defective on the face of the record is the allegation in the petition that the next of kin of the minors is their mother, and to find a defect there it would be necessary to take the position that the district court was bound to infer directly that Modesta Concepcion Cosme had the right of patria potestas over the children. That does not seem a necessary inference, however, in the light of the affirmative allegation that Garcia Lago was their tutor and sections 165 and 166 of the Judicial Code which provide for the suspension and denial of the rights of patria potestas in certain cases. Although the appointment as tutor has been declared invalid it is clear that that invalidity did not appear on the face of the record in the judicial authorization proceeding. It seems to this court that the Supreme Court of Puerto Rico could with propriety have confirmed the defendant's reliance on the order of the district court authorizing the mortgage. Moreover, the appellants have cited us no authorities holding that the district court could not authorize the execution of the mortgage in question on finding that it was necessary for the preservation of the estate. At the time the estate was in process of judicial administration. By stipulation Modesta Concepcion Cosme had waived her rights in such administration. There is no question of the jurisdiction of the court over the properties in question. The judgment of the Supreme Court turned on questions of local law, and we must affirm unless we find the error manifest and the decision rendered inescapably wrong and patently erroneous. De Castro v. Board of Commissioners, 1944, 322 U.S. 451, 64 S. Ct. 1121; Bonet v. Texas, Co., 1940, 308 U.S. 463, 60 S.Ct. 349, 84 L.Ed. 401.

None of the arguments made by the appellants impeaches the sufficiency of the judicial authorization of the district court

---

[4] Sections 80, 81 and 82 of the Law Relative to Special Legal Proceedings (Sections 614, 615 and 616 of the Code of Civil Procedure).

It is to be noted in this connection that the statutes provide for the attendance at the hearing of the district attorney, impose on him the duty of protecting the rights of the minors, and direct him to see that the court's decision is complied with.

and the equitable principles upon which the Supreme Court rested when it said:

"To decree the annulment of the claim of the defendant, by imposing on the latter the loss of the capital which he lent, and which was used in paying debts owed by the plaintiffs and in safeguarding their properties that were threatened with foreclosure, would be equivalent to allowing the unjust enrichment of the plaintiffs at the expense of a person who helped them in good faith, based on the legality and sufficiency of the legal authorization of the district court. This has been so admitted by counsel for the plaintiffs when he says that his representatives acknowledge that they are bound to refund the $8000 paid to the widow of Cintron. Why should not they be equally bound to refund the amount of the expenses incurred in the cancellation of the preceding encumbrances and in the constitution of the new lien and to pay interest at the stipulated rate? We see no reason for establishing the difference alleged by the appellants and are of the opinion that the lower court did not err in adjudging them to repay the total amount of the credit plus interest at the agreed rate and previously approved by the same court."

In disposing of the questions raised by the appellants concerning their claim for damages it is sufficient to say that the trial court found the evidence submitted by them at the first trial "insufficient" to support the claim and that the Supreme Court upheld that finding, remanding the case, nevertheless, "to do justice to the litigants, establish their respective rights and not allow the unjust enrichment of a party at the expense of the others" with instructions for the defendant to render an account. The findings then made by the trial court were upheld by the Supreme Court and have not been questioned on this appeal.

The appellants also claim they are entitled to costs and attorney's fees under section 327 of the Code of Civil Procedure.[5] Prior to the effective date of this statute as amended, the allowance of costs and attorney's fees rested in the discretion of the trial court. Bernier v. Sucn. Honore, 39 P.R.R. 177 (1929); D. Velez Gotay & Co. v. Franceschi, 51 P.R.R. 490 (1937); Soltero v. Velez, 52 P.R.R. 621 (1937). This case was originally decided by the trial court on October 11, 1934. On the first appeal the Supreme Court upheld the exercise of its discretion in refusing costs and attorney's fees and remanded the case only for the purpose of determining the claim for rents. As the judgment of the district court was rendered in 1934 the amendment of 1936 does not apply. Mason v. White Star Bus Line, Inc., 53 P.R.R. 320 (1938); Soltero v. Velez, 53 P.R.R. 539 (1938). So the earlier rule governs this case. The Supreme Court found no abuse of discretion and the appellants have not appealed from that ruling.

The judgment of the Supreme Court of Puerto Rico is affirmed.

---

[5] As amended by Act No. 69, approved May 11, 1936:

"Section 327: The party in whose favor any final judgment or resolution is rendered shall be allowed costs, which shall comprise the following disbursements. * * * In case any party shall have acted rashly, the Court shall include in its judgment the payment of the fees of the attorney for the other party, stating in its judgment the amount of said fees, taking into account the degree of guilt in the litigation, and the work necessarily done by the attorney for the other party. (Laws of Puerto Rico of 1936, page 352.)"