ANSELMA BEZARES ET AL., Petitioners and Appellees, *v.* DOLO-
RES GONZÁLEZ, MAYOR OF SAN LORENZO, Respondent and
Appellant. BASILIO DOMÍNGUEZ ET AL., Plaintiffs and
Appellants, *v.* HILDA PACHECO ALGARÍN, MAYORESS
OF JUNCOS, Respondent and Appellee. FÉLIX ROLDÁN
ROSA ET AL., Plaintiffs and Appellants, *v.* MARÍA SOCORRO
PÉREZ GAOS, MAYORESS OF FAJARDO, Respondent and
Appellee.

Nos. 485, 535 and 536. Decided February 2, 1962.

*A. Quirós Méndez* and *F. A. Quirós Méndez* for appellant in case No. 485. *Luis Muñoz Rivera* and *Hipólito Marcano* for appellees in case No. 485. *Luis Muñoz Rivera* and *Hipólito Marcano* for appellants in cases Nos. 535 and 536. *Oscar R. Brizzie* for appellee in case No. 535. *Juan Nevárez Santiago* and *Francisco González, Jr.,* for appellee in case No. 536.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

These are petitions for mandamus filed by municipal employees removed from their employments who have requested their reinstatement. In *No. 485*, the Mayor of San Lorenzo sent a letter dated January 9, 1961, to 38 employees of the municipality, notifying them that they had been substituted in their employments by a new incumbent, and ordering them to return the property under their custody. Of these 38 employees, eight had served during 8 years; another eight during 5, 6, and 7 years; sixteen between 1 to 4 years and three had served less than one year. The record does not show the length of service of the three remaining employees.

In *No. 535*, the Mayoress of Juncos, on January 9, 1961, substituted 14 employees of the municipality. One of them

had served 20 years; one 16 years; two 12 years; one 7 years; five 4 years; three 2 years, and one had served 3 months.

In *No. 536*, the Mayoress of Fajardo, on January 9, 1961, removed 14 employees from their employments in that municipality. Three had served 16 years; one 14 years; two for 12 years; one during 10 years; two 7 years; one for 6 years; two during 4 years, and two had served less than one year. One of them, Armando Colón Cruz, was actually changed from the office of Director of Civil Defense with a salary of $175 to another one with a salary of less than $110, which he rejected.

The Caguas Part of the Superior Court made findings of fact to the effect that the Mayor of San Lorenzo had removed these employees from their positions without preferment of charges, without holding a hearing, and only by virtue of the afore-mentioned communication. As a matter of law, the court concluded that these employees had been illegally removed, sustained the petition for mandamus, and ordered the Mayor to reinstate petitioners in their respective employments retroactively to January 9, 1961, with pay from that date, and to keep them in said employments. It imposed upon the Mayor costs and $800 for attorney's fees.

In the cases of the Mayoress of Juncos and of the Mayoress of Fajardo, the Humacao Part of the Superior Court concluded as a matter of fact that the employees were removed without preferment of charges, without holding any hearing and *"without just cause."* As a question of law the trial court concluded that these employees could have been so removed, dismissed the complaints, and imposed upon petitioners in each case costs and $200 for attorney's fees.

The Municipal Law, Act No. 142 of July 21, 1960, 21 L.P.R.A. § 1101 *et seq.* (1961 ed.), effective on January 9, 1961 provides in its § 35 that among the duties, functions and attributes of the Mayor there are particularly: to appoint all municipal officers and employees and remove them

from office whenever necessary for the good of the service, in accordance with the procedure provided in that Act. Section 42 provides that in certain municipalities the administrative officers shall be the Mayor, the Secretary, and the Director of Finance, and in others, the Mayor, the Secretary-Auditor, and the Treasurer, the municipal assembly having the power —§ 43—to create additional administrative offices. In accordance with § 44, these administrative officers shall hold office for the term for which the Mayor was elected or appointed, (4 years, § 33), unless sooner removed for just cause, upon preferment of charges. The officer so removed may appeal to the superior court.

Section 91 repeats that all appointments of employees shall be made by the Mayor on the recommendation of the respective municipal administrative officers. No municipal employee shall be appointed, promoted, demoted, or suspended or in any way discriminated against by reason of race, political ideas or religious creed, as § 92 reads. Section 93 provides that municipal employees may be removed by the mayor, *for just cause, upon preferment of charges,* and a *previous hearing* with ten days' notice to be held before a committee of three persons appointed by the mayor with the advice and consent of the municipal assembly who are not municipal employees. In said hearing the employee may defend himself from said charges and may be represented by counsel. From the decision of the committee removing him he may appeal to the superior court on issues of law and the decision of said court shall be final and unappealable.

Since we are dealing with a law which went into effect on the same day that these employees were removed from office, and most of them having served during many years, in view of the questions raised we shall make a historical account of the legislative provisions which have been in effect, covering this aspect of municipal functioning.

*Municipal Law of 1902.*—Provided in its § 32 that the mayor shall appoint, direct, and supervise the conduct of all the employees of the municipality, punishing them whenever necessary with their suspension or their removal. The offices of Secretary, Treasurer, Inspector of Public Works, and a Health Officer were created by appointment of the mayor with the consent of the council, and thus appointed, they held office during good behavior, unless removed for good and sufficient reasons after having been heard in their defense. There was a Comptroller appointed by the Council who could be removed by the latter for just cause and after a hearing.

*Municipal Law of March 8, 1906.*—Provided in its § 32, as amended by an Act of March 14, 1907 and by Act No. 35 of March 10, 1910, that the Mayor shall appoint all employees of the municipality whose appointments are not otherwise provided for in the Act, and which are authorized by the appropriations of the budget, and he shall, for just cause, remove all officers and employees appointed by him alone, or appointed by him with the advice and consent of the municipal council, except that the comptroller shall not be removed except and with the consent of the municipal council after charges shall have been preferred by the mayor before the council, said charges having been answered by the comptroller. The Act provided for the appointment of a Secretary, a Treasurer, a Comptroller, a Health Officer, and an Inspector of Public Works, whose terms expired with that of the Mayor who appointed them.

*Municipal Law of July 31, 1919.*—As amended by Act No. 9 of May 12, 1920 and Act No. 60 of July 12, 1921, provided for the appointment by the municipal assembly of the Council of Administration composed of a municipal commissioner of public service, police, and prisons, who would be the chief executive, and commissioners of health and charities, finance, public works, and public education, and the appointment of a Secretary and an Auditor. The members of the

Council of Administration shall hold office for four years, and except for the executive, they shall be removed by the municipal assembly for just cause, previous hearing, and the opportunity to defend himself. With the approval of the Council of Administration each one of its members may appoint the employees for his own office and with same approval he may remove them for just cause, previous hearing.[1]

*Municipal Law of 1928 as amended—21 L.P.R.A. § 1 et seq. (1955 ed.).*—It authorized the Mayor to appoint all administrative officers except the Auditor, who shall hold office for the term for which the Mayor who appointed him was elected or appointed. All appointments of employees shall be made by the Mayor on the advice of the respective administrative officers. The Mayor may remove said officers and employees for just cause, granting them public hearing and the opportunity to defend themselves.

 The preceding history of municipal laws shows two things: (1) that the Legislative Assembly has maintained for the municipalities the well-known classic distinction between an officer and an employee. Except in the Act of 1902, the officers always had a tenure which did not exceed the term of the Mayor elected or appointed. On the contrary, no municipal law fixed a term of tenure for the employees. (2) Municipal laws provided for the officers before expiration of their tenure, as well as for employees, that they could not be removed from their office or employments without just cause or sufficient cause, ordinarily after a hearing and with opportunity to defend themselves.

---

[1] After the approval of Act No. 11 of June 25, 1924, amended by Act No. 92 of August 22, 1925, which amended the Municipal Law of 1919, the Council of Administration was composed of a Mayor, Director of Municipal Charities, Treasurer, School Director, Director of Public Works, Auditor, and Secretary appointed for the term for which the Mayor was elected or appointed. The Mayor was authorized to appoint the other municipal employees, and to remove officers and employees for just cause, after a hearing, and an opportunity to defend themselves.

In *Belaval* v. *Todd,* 22 P.R.R. 590, decided in the year 1915, we interpreted the pertinent provisions of the Municipal Law of 1906, as amended in 1910. Dr. Belaval was serving as superintendent of the municipal hospital of San Juan, and he was removed by the Mayor by virtue of a letter informing him of the termination of his employment, and that another doctor was taking charge. We followed the general principle that when the power to remove is based on *cause,* or *just cause,* it involves a judicial power and the person removed must be notified and heard; and that this entailed a proceeding similar to a trial in which the officer or employee was given the opportunity to defend himself and to furnish evidence. We affirmed the judgment of the former District Court of San Juan, which had ordered by way of mandamus the reinstatement of Dr. Belaval. Previously, in *Ruiz* v. *Del Vallé,* 17 P.R.R. 654 (1911), a case in which we held that the requirement with respect to the notification and hearing of the employee had been fulfilled, we stated, in passing, that a petitioner must show clearly that he has been removed unjustly, for example, for political or religious reasons.

The *Belaval* case returned to this Court a second time. 24 P.R.R. 24 (1916). The district court refused to order the reinstatement of Dr. Belaval, after its judgment was affirmed, taking judicial notice that in the meantime, on November 4, 1914, elections for municipal offices had been held; that the Mayor elected, Todd himself, had taken office on January 11, 1915 and that Dr. Belaval's term had ended as a consequence thereof.

On this occasion we discussed the contentions presented once more before us. We considered whether the office held by Dr. Belaval had a definite term of tenure. We concluded that it involved an employee and not an officer with a fixed term. Then we considered whether the proceeding provided by law for removal was binding also on the Mayor who succeeded the one who made the appointment, that is, as we

stated at p. 34, whether the employees of the municipalities of Puerto Rico appointed pursuant to § 32 of that act automatically ceased to hold office the day on which the Mayor who appointed them terminated his office, or whether they continued to hold their offices so long as the position existed, and as long as they faithfully fulfilled the duties thereof. In an elaborate opinion rendered by then Associate Justice Mr. Del Toro, in which he analyzed the legislative intention according to the Municipal Law itself and referred to decisions then in effect, we concluded that the municipal employees did not cease in their employment with the incumbency of a new Mayor or appointing officer.

Mr. Chief Justice Hernández and Mr. Justice Aldrey delivered a dissenting opinion fundamentally based on the fact that Dr. Belaval, according to their view, was an officer who held an office with a fixed term which had already expired, and that he was not an employee. On considerations of a more or less political nature, some of which find their rebuttal in the opinion of the majority, the dissenting Justices also stated that even if it was a matter of an employment, the right to the office would cease upon the termination by operation of law of the municipal administration during which the Mayor had been appointed.

Concerning the cases of the municipalities of Juncos and of Fajardo, the trial court held in its conclusion of law that on January 9, 1961, the petitioners were not permanent employees pursuant to § 91 of the Municipal Law of 1960; that § 93 which provides the procedure for the removal of a municipal employee did not protect them because when the new municipal administration began, it had the right to appoint the municipal employees and the afore-mentioned section applied after the employees had been selected and appointed by the new administration. The legal effect of these conclusions was that the trial court inserted, obviously, a fixed tenure for the municipal employees, which is the duration of

the municipal administration which appointed them or the tenure of office of the appointing power which period of incumbency for employees, was not established by the Legislative Assembly in the Municipal Law of 1960 nor in any one of the former acts, as was provided for the Mayor and the officials.

The trial court likewise concluded that the theory sustained by the dissenting Justices in the *Belaval* case, should be applicable to the cases at bar, since there is nothing in the Municipal Law in effect which shows that municipal employees have permanent offices.

■ ■ Aside from the fact that in considering similar questions the rule of law which governs the trial courts is the one established by this Court and not the dissenting opinion of one or some of its Justices, no matter how convincing it may seem, the problem before us is not whether the Municipal Law provides that municipal employees have permanent positions. It is not a problem of incumbency, but of removal. The Act does not leave any room for doubt as to the procedure for the removal of the petitioners. Neither does § 93 make any distinction upon offering its protective shield, between employees appointed by the same administration that may remove them or a previous administration. See: *Cintrón* v. *Berríos*, 24 P.R.R. 673 (1917) ; *Sarriera* v. *Todd*, 26 P.R.R. 3 (1917), where the right to a mandamus was upheld and the employee reinstated even though it was found that there was just cause, but where no previous notice and hearing were granted; *cf. Lavergne* v. *Insular Police Commission*, 27 P.R.R. 758 (1919) ; *Corrada* v. *Municipal Assembly*, 79 P.R.R. 345 (1956) ; 3 Antieau, Municipal Corporation Law 268 *et seq.* (1958) ; 4 McQuillin, The Law of Municipal Corporations 328 *et seq.*[2] (1949).

---

[2] We have seen an analogous situation of indefinite employments in the classified civil service and in cases of teachers. We upheld the right of the employee not to be removed without just cause and after having an opportunity to be heard and to defend himself. *Cf. Gil* v. *Chardón*, 41

■ The Mayors maintain that the second case of *Belaval* v. *Todd* was overruled by the second case of *De Castro* v. *Board of Commissioners*, 59 P.R.R. 673 (1942). They are wrong, since there is no conflict between these two decisions. The case of Belaval was decided on the ground that he was an employee without a fixed term of incumbency. In the *De Castro* case we dealt with an *officer* who under the special statute designed for the Government of the Capital, for all purposes was equivalent to, and exercised the office of Mayor. We know from the history of the different municipal laws that have been in effect, that from 1906 the officials always had a fixed term of tenure which did not exceed that of the Mayor who appointed them. The problem which was really raised in *De Castro* was whether under the provisions of the special law for the Government of the Capital—Act No. 99 of May 15, 1931—which provided in its § 21 that the Administrator of the Capital would be the chief executive thereof and would discharge his office during good behaviour, the term of incumbency of the Administrator was indefinite, or whether, on the contrary, it ceased after municipal elections in which a new Board of Commissioners was elected. The question decided in *De Castro* was the term of incumbency of a municipal office, which was equivalent to that of a Mayor, in the light of the provisions of the special law which created said office. Upon well considered reasons with a view towards other provisions of the law itself, and of the practical interpretation given thereto by political parties and other

P.R.R. 208 (1930); *Pérez* v. *Esteves, Commissioner of the Interior*, 43 P.R.R. 12 (1932); *Matos* v. *Veve, Marshal*, 46 P.R.R. 344 (1934); *Pérez* v. *Garrido, Commissioner*, 48 P.R.R. 445 (1935); *Domenech, Treas.* v. *District Court*, 48 P.R.R. 527 (1935); *Pereda* v. *Padín*, 49 P.R.R. 924 (1936); *Gatell* v. *McLeod*, 56 P.R.R. 114 (1940); *Cruz* v. *Garrido, Commissioner*, 58 P.R.R. 655 (1941); *González* v. *Gallardo, Commissioner*, 62 P.R.R. 263 (1943); *García* v. *Cordero, Mgr.*, 62 P.R.R. 299 (1943); *Rodríguez* v. *Buscaglia, Treas.*, 63 P.R.R. 470 (1944); *Rosario* v. *Gallardo, Commissioner*, 65 P.R.R. 53 (1945); *Cantellops* v. *Fernós, Commissioner*, 65 P.R.R. 749 (1945); *Rivera* v. *Chancellor of the University*, 73 P.R.R. 361, 363.

interested parties—*De Castro* v. *Board of Comm'rs*, 322 U.S. 451, 459–465—we held that said office of Administrator of the Capital had a fixed incumbency of four years.

It is true that in the *De Castro* case we made reference, perhaps with more emphasis than it was necessary, to the case of *Shurtleff* v. *United States*, 189 U.S. 311 (1903), a decision which dealt with the manner in which the President of the United States removed an official. But that fact did not change the question involved and decided therein. The question concerning the removal of the Administrator of the Capital had already been decided in the first case of De Castro, 57 P.R.R. 149 (1940) affirmed in 116 F.2d 806, *cert. denied* in 314 U.S. 614.[3]

█ The other argument presented by the Mayors—which would be best addressed to the Legislative Bodies since it concerns a question of political law such as the constitution and organization of the municipalities, since they are the best judge of the desirability and convenience of the rules to be established—is that the municipal officers are of a

---

[3] If only by way of observation, the case of Shurtleff, *supra*, involved the removal of an official by the President. The Act of Congress which created the office of the officer removed provided that he could be removed for certain specific causes which were stated. The doctrine was reaffirmed that in order to remove him for whichever of those causes he was entitled to previous notice and a hearing. The Supreme Court, however was of the opinion that since the President had failed to give notice and a hearing, the officer had not been removed for any cause specified in the statute. Fundamentally what the case decides is that the constitutional power of the President to appoint entails the power to remove, and that such a power of the President can not be restricted except by explicit language in the statute, and it should not be inferred by implication from the fact that the statute fixed several causes for removal. But see the case of *Humphrey's Executor* v. *United States*, 295 U.S. 602 (1935), in which the Supreme Court itself decided that a provision in the law creating the Federal Trade Commission to the effect that the Commissioners could be removed by the President for certain specified causes, should be interpreted and was interpreted in the sense that Congress intended to restrict the power of removal of the President to one or more of said causes. The case of Shurtleff was distinguished and its decision was restricted to its own facts and circumstances.

political nature. It is inferred from the argument that each new administration should be free to dispose of the incumbents with no obstacles whatsoever.

The background of the last Municipal Law which went into effect precisely on the day these employees were removed is not very encouraging for this contention. This Act, approved on July 21, 1960, was House Bill No. 285 presented on March 14, 1957. For over three years this bill for a new municipal law received the consideration of both legislative bodies. As it was originally presented, its § 92 provided that the appointments for the municipal civil service would be made on a merit basis and to carry out such a purpose the Municipal Assembly should adopt by means of ordinances, the necessary regulation with the advice, aid, and cooperation of the Personnel Office of the Commonwealth. These ordinances would provide plans for classification and uniform pay based on the duties and responsibilities of the positions. Section 94 provided that every municipal employee would be appointed by the Mayor for a probatory period of not more than six months during which the appointment could be left without effect, and thenceforth the appointment would be of a permanent nature. The procedure for the removal of said employees would then be established.

■ As the Bill was approved in the House, the municipal appointments would be made on a merit basis, but it was provided that the employees would discharge their offices for the term for which the Mayor was elected or appointed. In other words, the employees would have a tenure of office and they were placed in a situation similar to that of the officials. Already in the Senate, in the report given by its State and Municipal Government Committee on April 2, 1959, it was proposed to eliminate the part which provided that the employees discharge their office for the term for which the Mayor was elected. Respecting this elimination the Committee

stated: "We understand that the permanency of municipal employees is an indispensable requirement for the existence of a merit system and that it is specious to say that there will be a merit system unless there is going to be permanency for municipal employees. It is the purpose of this Bill to strengthen the efficiency of municipal services." On the other hand, the Committee adopted an amendment to the effect that a number between two and six employees, according to the budget of the municipalities, and eight in the Municipality of San Juan, will be considered as confidential employees of the Mayor not subject to the provisions of permanency. As to the new Municipal Law in general, the Committee stated that it was attempting to bring to the municipal level the spirit of reform which has so greatly contributed in recent years to make the Government of the Commonwealth of Puerto Rico a showcase of orientation to the public administrators in other countries.

The pertinent provisions of the Bill as it was finally approved are more like those of the former Municipal Law which it substituted. It should be noted that the provision fixing the term of incumbency for municipal employees for the period for which the Mayor was elected or appointed, was definitively eliminated, which provision did not appear in the prior municipal laws. It may also be noted that the provisions of § 93 of the law in force with respect to the removal of municipal employees is more explicit and stricter than any prior provision to that effect. And it is significant that ever since 1916 this Court had interpreted similar provisions of the Municipal Law in the sense that municipal offices did not expire with the establishment of a new municipal administration, and even so the Legislative Assembly did not provide for the contrary, and did not do so recently, in order to give municipal offices a term similar to those of the officials so that it should not exceed the life of an administration.

The judgment rendered by the Superior Court, Caguas Part, in the San Lorenzo case shall be affirmed. It having been alleged, however, that among the removed employees, there were some who were officials, in which case their terms would have expired, the case is remanded to the trial court so that it may determine on this particular.

The judgments rendered by the Superior Court, Humacao Part, shall be reversed and others rendered instead ordering the immediate reinstatement of appellants in their employments, retroactive to January 9, 1961.

Appellees in each case shall be ordered to pay costs and $400 attorney's fees in the trial court.

Mr. Justice Dávila did not participate herein.

