## DE CASTRO v. BOARD OF COMMISSIONERS OF SAN JUAN.

No. 349. Argued April 24, 1944.—Decided May 29, 1944.

*Mr. William Cattron Rigby,* with whom *Messrs. Fred W. Llewellyn, Gabriel de la Haba,* and *Hugh R. Francis* were on the brief, for petitioner.

*Mr. F. Fernandez Cuyar* for respondent.

MR. CHIEF JUSTICE STONE delivered the opinion of the Court.

In this case the petition urged as a ground for certiorari, which moved us to grant it, that the decision of the Court of Appeals below, as in a companion case, *Mario Mercado E Hijos* v. *Commins, post,* p. 465, "practically closes the doors of the appellate court below" to appeals which the statutes of the United States allow to Puerto Rican litigants in the insular courts and "discriminates in favor of the fortunate persons" who, through diversity of citizenship, can take their cases to the United States District Court for Puerto Rico,[1] instead of to the insular courts.

Petitioner brought the present proceeding by petition for certiorari in the District Court of San Juan, Puerto Rico, to review the action of respondent, the Board of Commissioners governing the City of San Juan, in removing petitioner from the office of city manager to which the

[1] See 48 U. S. C. § 863.

Board had appointed him. The District Court of San Juan sustained the Board. On appeal the Supreme Court of Puerto Rico reversed the insular District Court and directed petitioner's reinstatement. 57 P. R. 149. On appeal to the Court of Appeals for the First Circuit under 28 U. S. C. § 225, that court affirmed, 116 F. 2d 806, and this Court denied certiorari, 314 U. S. 614.

On the remand the Supreme Court of Puerto Rico, on motion of respondent, entered judgment staying execution of its first judgment insofar as it ordered petitioner's reinstatement, on the ground that petitioner's term of office had expired in February, 1941, after the decision of the Court of Appeals on the first appeal. 59 D. P. R. 676 (Spanish Edition). Construing the applicable statutes of Puerto Rico in the light of the practical construction given to them by public officials and political parties of the island, and other matters of which it took judicial notice, the insular court came to the conclusion that "the tenure of office of the City Manager . . . is that of four years, provided that during the same he observe good behavior." On appeal from this judgment the Circuit Court of Appeals affirmed, 136 F. 2d 419. We granted certiorari, 321 U. S. 757, for the reason already stated and because some observations in the opinion of the Circuit Court of Appeals have raised serious questions with respect to the appropriate rule governing decision of cases involving local laws, brought from the insular courts of Puerto Rico for review by the Court of Appeals for the First Circuit and by this Court.

The Court of Appeals, in affirming the judgment of the Supreme Court of Puerto Rico, pointed out that § 21 of Act No. 99 of 1931, which established the government of the city of San Juan, the capital of Puerto Rico, provided that the city manager "shall be appointed by the Board of Commissioners created by this Act and shall hold office

during good conduct." It said, "If we were free to take a wholly independent view of the point at issue we would be inclined to conclude that the meaning of § 21 is clear, and that the court below went beyond the permissible limits of interpretation in reading the clause 'and shall hold office during good conduct' as meaning that 'the tenure of office of the city manager of the capital is that of four years, provided that during the same he observe good behavior.'" But it felt constrained to affirm the judgment of the Puerto Rican tribunal by our decision and opinion in *Bonet* v. *Texas Company,* 308 U. S. 463, 471.

In that case, in reversing a decree of the Circuit Court of Appeals which had reversed the Supreme Court of Puerto Rico on a point of local law, we said, "to justify reversal in such cases, the error must be clear or manifest; the interpretation must be inescapably wrong; the decision must be patently erroneous." And since the Court of Appeals in this case was not prepared to say that the judgment now under review is "inescapably wrong," and as it thought that this Court's statement in the *Bonet* case had reduced the duty of the Court of Appeals to the performance of a mere mechanical function, it felt compelled to affirm the judgment. It also suggested that, as the rule of decision applicable to appeals from the insular Supreme Court, as announced by the *Bonet* case, had not been applied in appeals from the United States District Court for Puerto Rico, different interpretations of local law might be established in the Court of Appeals, depending on whether the case was appealed from the insular court or from the United States District Court for Puerto Rico.

Our opinion in the *Bonet* case was the culmination of efforts by this Court, beginning with *Garcia* v. *Vela,* 216 U. S. 598, 602 (1910); *Lewers & Cooke* v. *Atcherly,* 222 U. S. 285, 294 (1911); and *Ker & Co.* v. *Couden,* 223 U. S. 268, 279 (1912), to insure a review by the federal courts of decisions of the local courts of our insular possessions in

matters of peculiarly local concern which should leave appropriate scope for the development by those courts of a system of law which, differing from our own in its origins and principles, would nevertheless be suitable to local customs and needs. In thus interpreting the function of the federal appellate courts in reviewing decisions of the insular tribunals we only followed a principle which had long been established for appeals to federal courts from the courts of our territories within the United States.[2]

From the beginning we have recognized that the appellate review of insular cases was not given to the federal courts for the purpose of superimposing upon the Spanish law our common law preconceptions, except so far as that law must yield to the expressed will of the United States. *Diaz* v. *Gonzalez*, 261 U. S. 102, 105–6. Hence we have emphasized as a cardinal principle of review in such cases that the mere fact that our own system of law and statutory construction would call for the application of one rule to a given set of facts, does not preclude the adoption of a different one by the insular courts. See *Waialua Co.* v. *Christian*, 305 U. S. 91, 109. If the rule thus announced by the insular court is one which is not plainly inconsistent with established principles of the local law, or in their absence is one accepted by the practice of the community, it will not be rejected here merely because it is not in logical harmony with the rules which we would apply to

---

[2] *Sweeney* v. *Lomme*, 22 Wall. 208, 213; *Northern Pacific R. Co.* v. *Hambly*, 154 U. S. 349, 361; *Fox* v. *Haarstick*, 156 U. S. 674, 679; *Armijo* v. *Armijo*, 181 U. S. 558, 561; *Copper Queen Mining Co.* v. *Board of Equalization*, 206 U. S. 474, 479; *Lewis* v. *Herrera*, 208 U. S. 309, 314; *English* v. *Arizona*, 214 U. S. 359, 361, 363; *Santa Fe County* v. *Coler*, 215 U. S. 296, 305, 307; *Albright* v. *Sandoval*, 216 U. S. 331, 339; *Treat* v. *Grand Canyon Ry. Co.*, 222 U. S. 448, 452; *Clason* v. *Matko*, 223 U. S. 646, 653; *Gray* v. *Taylor*, 227 U. S. 51, 56–57; *Phoenix Ry. Co.* v. *Landis*, 231 U. S. 578, 579–580; *Santa Fe Central Ry. Co.* v. *Friday*, 232 U. S. 694, 700.

a community within the United States. It will be rejected only on a clear showing that the rule applied by the local court does violence to recognized principles of local law or established practices of the local community.

The guiding principle, which is incapable of statement in a short formula, has been variously phrased in terms which in every case must be interpreted in the light of the particular situation to which they were. applied.[3] But the principle which these phrases were intended to express has not been more accurately and comprehensively stated than by Mr. Justice Holmes in words which are completely applicable to the present case, in *Diaz* v. *Gonzalez, supra,* 105–6:

[3] Given the conditions which, as we have pointed out, call for the acceptance here of the decision of the local court, this Court has said that its decree must be accepted here unless "we thought it clearly wrong," *Santa Fe Central Ry. Co.* v. *Friday,* 232 U. S. 694, 700, unless "constrained to the contrary by a sense of clear error committed," *Villanueva* v. *Villanueva,* 239 U. S. 293, 299, *Matos* v. *Alonso Hermanos,* 300 U. S. 429, unless "manifest error be disclosed," *Fox* v. *Haarstick,* 156 U. S. 674, 679; *English* v. *Arizona,* 214 U. S. 359, 363; *Santa Fe County* v. *Coler,* 215 U. S. 296, 305; *Treat* v. *Grand Canyon Ry. Co.,* 222 U. S. 448, 452; *Waialua Co.* v. *Christian,* 305 U. S. 91, 109, "except upon an inescapable conclusion that it was wrong," *Diaz* v. *Gonzalez,* 261 U. S. 102, 105, unless "plainly incorrect," *Puerto Rico* v. *Rubert Hermanos,* 315 U. S. 637, 646. In other cases, in affirming the decision of the local court, we have said that we will accord to its decision "great if not controlling weight," *Lewis* v. *Herrera,* 208 U. S. 309, 314; or "great weight," *Lewers & Cooke* v. *Atcherly,* 222 U. S. 285, 294; cf. *Cordova* v. *Folgueras,* 227 U. S. 375, 378–9; or that we would "lean toward the interpretation adopted by the local court," *Copper Queen Mining Co.* v. *Board of Equalization,* 206 U. S. 474, 479; *English* v. *Arizona, supra,* 361; *Clason* v. *Matke,* 223 U. S. 646, 653; *Gray* v. *Taylor,* 227 U. S. 51, 57; or that we were "not disposed to disturb" its construction, *Albright* v. *Sandoval,* 216 U. S. 331, 339; *Armijo* v. *Armijo,* 181 U. S. 558, 561; cf. *Phoenix Ry. Co.* v. *Landis,* 231 U. S. 578, 579–80; and have spoken of the "caution to be used before overruling" local decisions, *Fernandez & Bros.* v. *Ojeda,* 266 U. S. 144, 146.

"This Court has stated many times the deference due to the understanding of the local courts upon matters of purely local concern. It is enough to cite *Villanueva* v. *Villanueva,* 239 U. S. 293, 299; *Nadal* v. *May,* 233 U. S. 447, 454. This is especially true in dealing with the decisions of a Court inheriting and brought up in a different system from that which prevails here. When we contemplate such a system from the outside it seems like a wall of stone, every part even with all the others, except so far as our own local education may lead us to see subordinations to which we are accustomed. But to one brought up within it, varying emphasis, tacit assumptions, unwritten practices, a thousand influences gained only from life, may give to the different parts wholly new values that logic and grammar never could have got from the books. In this case a slight difference in the caution felt in dealing with the interest of minors (*Baerga* v. *Registrar of Humacao,* 29 P. R. 440, 442), and a slight change of emphasis in the reading of statutes, explain the divergence between the Supreme Court and the Circuit Court of Appeals."

Beyond the fact that common law judges in such cases are reviewing civil law decisions, it is of significance that considerations relevant for decision must be drawn from an environment unfamiliar to and far removed from that in which the reviewing court sits. That which is familiar and accepted in the island forum, in construing a statute or formulating a rule of law, may appear strange or unorthodox in a common law setting. In bridging gaps between legal systems having different origins and history, and governing two different polities, the rule we have announced has special importance.

Repeated admonitions that in cases coming from the Puerto Rican insular courts to the federal courts for review, where the Constitution or statutes of the United States were not involved, great deference must be paid to

local decisions, having failed of their purpose, see *Bonet* v. *Yabucoa Sugar Co.*, 306 U. S. 505,[4] we restated them in more emphatic form in *Bonet* v. *Texas Company, supra,* 470, in the sentence quoted in the opinion below which we have repeated here. In order that its true purport might not be misunderstood we accompanied the sentence by the statement of Mr. Justice Holmes in *Diaz* v. *Gonzalez, supra,* 105–6, which we have quoted, and in the light of that exposition we added: "Such judgment of reversal [by the Circuit Court of Appeals] would not be sustained here even though we felt that several possible interpretations that of the Circuit Court of Appeals was the most reasonable one."

Thus interpreted and read in its context the principle, as restated in the *Bonet* case, that to justify reversal by the federal courts of a decision of an insular supreme court in a matter of local concern, "the error must be clear or manifest; the interpretation must be inescapably wrong," is not a mere mechanical device which requires or admits, save in exceptional cases, of the summary disposition of appeals from that court. Nor does it minimize the importance or dignity of the appellate function in such cases. On the contrary, we think that it imposes on the Court of Appeals and on this Court the peculiarly delicate task of examining and appraising the local law in its setting, with the sympathetic disposition to safeguard in matters of local concern the adaptability of the law to local practices and needs. It is one which ordinarily cannot be performed summarily or without full argument and examination of the legal questions involved. But if in the light of such an examination it is found that the rule adopted by the lo-

---

[4] See also *Diaz* v. *Gonzalez,* 261 U. S. 102; *Fernandez & Bros.* v. *Ojeda,* 266 U. S. 144; *Matos* v. *Alonso Hermanos,* 300 U. S. 429; *Puerto Rico* v. *Rubert Hermanos,* 315 U. S. 637; and similarly as to review of decisions of the Hawaiian Supreme Court, *Waialua Co.* v. *Christian,* 305 U. S. 91.

cal tribunal is an intelligible one, not shown to be out of harmony with local law or practice, it is not to be rejected because we think a better could have been devised or because we find it out of harmony with our own traditional system of law and statutory construction.

Nor does it follow that the deference due, on appeals from the local tribunals, to their understanding of matters of local concern will lead to the establishment of a local law differing from that developed in decisions in appeals from the federal district courts sitting in our insular possessions. It is not any the less the duty of the federal courts in cases pending in the federal district court or on appeal from it to defer to that understanding, when it has found expression in the judicial pronouncements of the insular courts, *Nadal* v. *May,* 233 U. S. 447, 454; *Diaz* v. *Gonzalez, supra,* 105; *Waialua Co.* v. *Christian, supra,* 109. Once understood what deference is to be paid, the problem is comparable to that presented when, upon appeals from federal district courts sitting in the states, the federal appellate courts are required to follow state law under the rule of *Erie R. Co.* v. *Tompkins,* 304 U. S. 64. See *Wichita Company* v. *City Bank,* 306 U. S. 103; *Huddleston* v. *Dwyer,* 322 U. S. 232.

There remains for consideration the appropriate application of these principles to the facts of the present case. The Act of the Puerto Rican legislature of May 15, 1931, Act No. 99 of 1931, established a special form of city government for the capital city, San Juan.[5] Legislative powers are vested in a Board of five Commissioners; the first Commissioners were to be appointed by the Governor with the advice and consent of the Senate, for terms of one, two,

---

[5] The form of government for other municipalities in Puerto Rico is prescribed by Act No. 53 of 1928, which provides for a Mayor to be elected "in the same manner required by this Act for members of the municipal assembly" (§ 29), and hence presumably to serve a term of four years (cf. § 17).

three, four and five years, respectively (§ 9), but the Commissioners so appointed were to hold office only until the first Monday in January, 1937, (§ 50), and thereafter the "Board of Commissioners created by this Act" was to be elected at the general election held in 1936 and every fourth year thereafter (§ 50).[6] The Act provides that the City Manager, who is the chief executive of the city, "shall be appointed by the Board of Commissioners created by this Act and shall hold office during good conduct" (§ 21). He "may be removed by the Board of Commissioners, for just cause" after hearing, and causes for removal are enumerated (§ 22). Five other administrative officers are appointed by the City Manager (§ 26), and an Auditor is appointed by the Board of Commissioners (§ 36); the provisions as to their tenure of office and removal by the agency appointing them (§§ 27, 36) are identical with those for the City Manager,[7] save that only as to the City Manager does the Act specify a tenure of office "during good conduct." Other employees, appointed by the officers under whom they serve, "shall be appointed for the term for which each officer is appointed," and are also removable for cause after hearing, the causes not being specified, however (§ 39). No provision is made for bringing such employees within the Puerto Rican Civil Service Act, Act No. 88 of 1931, adopted four days before the adoption of Act No. 99.

The Puerto Rican Supreme Court refused to hold that the provision that the City Manager "shall hold office

---

[6] By Act No. 10 of 1937 the Board was increased to nine, beginning in 1941, four Commissioners to be appointed every four years by the Governor with the advice and consent of the Puerto Rican Senate, and five to be elected as previously provided.

[7] In the English text the City Manager is removable for "inexcusable *negligence* in the performance of his duties," the officers appointed by him for "inexcusable *ignorance* in the performance of their duties" (italics added). In the Spanish text the word is "negligencia" in both cases.

during good conduct" so conclusively established that he was to hold office for life as to preclude resort to extrinsic evidence of legislative intention. It held that his term was the same as that of the Board of Commissioners which appointed him, so that petitioner, who was appointed in 1937, by a Board of Commissioners elected for four years, held office for "four years provided that during the same he observe good behavior." [8] We cannot say that these holdings were so clearly wrong as to require a federal appellate court to refuse to pay deference to the insular court's decision.

While a provision that an office be held "during good behavior" is generally deemed indicative of an intention to create a life tenure unless cause for removal arises, see *Matter of Hennen,* 13 Pet. 230, 259; *Smith* v. *Bryan,* 100 Va. 199, 203, 40 S. E. 652, 653; *Chesley* v. *Council of Lunenburg,* 28 Dominion Law Rep. 571, 572, it has not been regarded, even where traditional notions of Anglo-American law prevail, as a rigid formula precluding any other construction. [9] And a tenure for a period of years

---

[8] We need not consider what, under this construction, was the term of office of the City Manager first appointed in May, 1931. An admissible construction would be that the Board of Commissioners appointed by the Governor to serve until January 1937 was regarded as a single body with a five-year term, despite the annual changes in its membership, and hence the City Manager, whose term of office was that of the body appointing him, also had a tenure of some six and one-half years. At least this conforms to what in fact occurred.

[9] State courts have held that a provision for tenure "during good behavior" does not preclude the termination of the tenure by good faith abolition of the office, *Shira* v. *State,* 187 Ind. 441, 119 N. E. 833; that such a provision is not necessarily inconsistent with a constitutional restriction on the number of years for which the office can be held but will be read as creating a tenure for a term of years during good behavior, *Callaghan* v. *Tobin,* 40 Tex. Civ. App. 441, 448, 90 S. W. 328, 331; *Callaghan* v. *Irvin,* 40 Tex. Civ. App. 453, 459, 90 S. W. 335, 338; *Callaghan* v. *McGown,* 90 S. W. 319, 322 (Tex. Civ. App.); *Neumeyer* v. *Krakel,* 110 Ky. 624, 640, 62 S. W. 518, 523;

during good behavior has not been regarded as a contradiction in terms by American courts.[10]  In *Shurtleff* v. *United States,* 189 U. S. 311, 316, this Court recognized and applied the strong presumption against the creation of a life tenure in a public office under the federal government.  To hold that the City Manager was appointed for life would, according to the terms of § 39, give to all employees appointed by him a tenure for his life.  An intention to create such an *estate pur autre vie* in a public office would at least be somewhat unusual.  On the other hand, if they are to be deemed appointed for their own lives, the result would be that on the death or resignation of one City Manager, his successor would be unable to select even his most immediate subordinates and a life tenure would be implied for a large group of municipal employees in disregard of the rule of *Shurtleff* v. *United States.*

Moreover there is no provision that the other municipal officers are to serve during good conduct, and § 39 seems to assume that they shall have defined terms of office.  To hold that they could be appointed for life would be inconsistent with the rule of *Shurtleff* v. *United States, supra,* which the insular court accepted and approved.  Since the Act is silent as to their terms of office, they can presumably

---

but cf. *Stuart* v. *Ellsworth,* 105 Me. 523, 75 A. 59; *Roth* v. *State,* 158 Ind. 242, 266–8, 63 N. E. 460, 468–9; and that a provision that officers appointed by the Mayor and Council shall hold office "during good behavior or until they may be severally removed by the Mayor or by three-fourths vote of the Council . . ." authorizes removal at will by the Mayor or Council, *Smith* v. *Bryan,* 100 Va. 199, 40 S. E. 652; cf. *People ex rel. Maloney* v. *Douglas,* 195 N. Y. 145, 150, 87 N. E. 1070, 1072.  *Contra, Chesley* v. *Council of Lunenburg,* 28 Dominion Law Rep. 571.  And in construing such provisions the courts have attributed weight to the practical construction placed on them by the public officials concerned, *Klink* v. *State,* 207 Ind. 628, 633, 194 N. E. 352, 354; *Smith* v. *Bryan, supra,* and to supposed anomalies resulting from a contrary construction, *Smith* v. *Bryan, supra.*

[10] *Bruce* v. *Fox,* 1 Dana (Ky.) 447, 452 *et seq.;* see cases cited *supra* note 9.

be appointed for any term not exceeding that of the officer appointing them. The interpretation contended for by petitioner would seemingly produce the result that all of the other city officers, save the Auditor, and the employees in their respective offices, could be appointed for the life of the City Manager, unless he should, as the Puerto Rican court assumed he could, decide to appoint them for a shorter term (see §§ 26, 39). In the latter case appointees of other officials, themselves appointed for short terms, would necessarily have a like tenure of office (§ 39), while those of the City Manager would have a tenure for his life, and those of the Auditor a tenure of four years. Such incongruities the Puerto Rican court thought weighed heavily against the contention that petitioner's tenure was for life. This is the more so because the appointees of the City Manager and of officers appointed by him include most of the municipal officers and employees, none of whom are subject to the insular civil service laws, but who could be appointed for petitioner's life should petitioner's construction of the Act prevail.

In addition to considering the consequences of such a holding the Puerto Rican Supreme Court looked to the practical construction placed on the Act by the political parties of Puerto Rico, as shown by facts of which it could properly take judicial notice. It said that "the political parties of the Island have always construed this statute in the sense that the term of office of the City Manager of the capital is that of four years." It pointed out that at the general election held in 1936 and at that held in 1940 each of the political parties participating proposed a candidate for the office of City Manager, although that office did not appear on the ballot. It said that it was well known that petitioner was the candidate of the winning party at the 1936 election and was appointed City Manager by the newly elected Board of Commissioners to replace the then incumbent, and that another was the

candidate of petitioner's party at the 1940 election, and was appointed City Manager by the newly elected Board of Commissioners. This practical construction by the electorate and political parties, of which petitioner was himself the beneficiary,[11] strongly supports the interpretation of the Act as conferring on the City Manager a tenure no longer than that of the Board of Commissioners which appointed him.

In view of these considerations and of the principles long observed by this Court in reviewing decisions of the insular courts, which we have stated, we cannot say that we should not defer to the view of the Supreme Court of Puerto Rico that the meaning of § 21, when examined with the related provisions of Act No. 99, in the light of the prevailing practical construction of it, is not so plain and unambiguous as to preclude resort to extrinsic aids to interpretation. Nor can we say, that the practical construction given the Act, together with the strong presumption against life tenures, and the principle, accepted by the Supreme Court of Puerto Rico on the authority of numerous American decisions, that ambiguities should be resolved in favor of the shorter term of office,[12] were clearly insufficient to support the construction which it adopted.

Petitioner calls to our attention an opinion of the Attorney General of Puerto Rico, dated January 30, 1937, stating that "The administrative officers of the Capi-

---

[11] The courts below did not consider, and the facts before us do not enable us to decide, whether should petitioner have prevailed in his construction of the Act as providing a life tenure, he could also establish his right to the office over that of the first incumbent, whom he superseded.

[12] The Puerto Rican Supreme Court cited *Aggeler* v. *Dominguez*, 217 Cal. 429, 19 P. 2d 241; *Lowrie* v. *Brennan*, 283 Mich. 63, 276 N. W. 900; *Chamski* v. *Board of Auditors*, 288 Mich. 238, 284 N. W. 711; *Dobkins* v. *Reece*, 17 S. W. 2d 81 (Tex. Civ. App.); *Smith* v. *Bryan*, *supra*, n. 9; 135 A. L. R. 1173, 1175.

tal . . . were appointed during good behavior" and that the appointments "participate of the nature of a life tenure." He also refers to correspondence of the first City Manager which could be taken as supporting respondent's position as much as it does petitioner's. It does not appear that these were called to the attention of the Supreme Court of Puerto Rico, but in any event they do not, in our opinion, counterbalance the weight rightly to be given to the decision of the insular Supreme Court as the ultimate insular interpreter of the local law. We have considered but do not find it necessary to discuss other contentions of lesser moment, most of which were dealt with in the opinion of the Court of Appeals below, and none of which call for a conclusion different from that which it reached.

*Affirmed.*