Judith A. SCHENCK, Plaintiff-Appellant,

v.

The GOVERNMENT OF GUAM, Guam Memorial Hospital, Defendants-Appellees.

No. 77–3630.

United States Court of Appeals, Ninth Circuit.

Dec. 6, 1979.

John C. Dierking, Jr., Agana, Guam, for plaintiff-appellant.

Roger E. Willmeth, Asst. Atty. Gen., Agana, Guam, argued, for defendants-appellees; Ronald J. Cristal, Asst. Atty. Gen., Agana, Guam, on brief.

Before BROWNING, CHOY and HUG, Circuit Judges.

HUG, Circuit Judge:

Appellant, Mrs. Judith Schenck, appeals a decision of the District Court of Guam (Appellate Division) which reversed a judgment in her favor rendered by the Superior Court of Guam. The Superior Court, sitting without a jury, found that the appellee, Guam Memorial Hospital, failed to provide reasonable medical care and supervision to the appellant during surgery performed by a private physician using hospital facilities, and awarded appellant $80,000 in damages. The three-judge panel of the District Court reversed the Superior Court's decision on the grounds that: (1) the evidence at trial was insufficient to find that the hospital was liable for negligent acts of its employees under a theory of respondeat superior; and (2) there was no legal theory upon which the hospital could be held independently liable for its failure to supervise or review surgery performed by a private physician using hospital facilities. We affirm the decision of the District Court.

*Background*

In August, 1973, the appellant resided with her husband and two children in Truk, Trust Territory of the Pacific Islands, where she and her husband taught school. Upon determining that she was pregnant, appellant went to Guam to obtain an abortion. In Guam, appellant contacted a private physician, Dr. Vivian R. Batoyon, who referred her to a psychiatrist for a consultation. The psychiatrist recommended a therapeutic abortion which Dr. Batoyon agreed to perform.

Appellant was admitted to Guam Memorial Hospital (GMH) on August 17, 1973, and a dilation and curettage (D&C) procedure was carried out by Dr. Batoyon that afternoon. Dr. Batoyon was not an employee of the hospital, but she had staff privileges to perform obstetrical and gynecological procedures at GMH.

On the operative report of Dr. Batoyon, the diagnosis for appellant was listed as "incomplete abortion." However, in appellant's patient history, Dr. Batoyon referred to a possible "therapeutic abortion" and the diagnosis listed on the anesthesiology report was therapeutic abortion. An incomplete abortion is one in which the uterus has already begun to evacuate itself naturally and spontaneously and the fetus or a portion has already passed. A therapeutic abortion is an operative procedure by which the fetus is surgically evacuated from the uterus. There is no evidence that anyone on the hospital staff questioned this contradictory diagnosis. Dr. Batoyon testified that the inconsistent diagnosis could be explained by the fact that there was a question in her mind about whether the appellant had already begun to abort naturally.

During the course of the operation, tissue was removed from the lining of the cavity of the uterus. A nurse assisting in the operation, an employee of GMH, placed the tissue in a container and sent it to the hospital pathologist for an analysis.

The pathologist, also a GMH employee, examined the tissue, and determined that it contained no fetal parts. The requisition slip which accompanied the specimen to the pathology lab contained a pre-operative and post-operative diagnosis of incomplete abortion. This diagnosis was all that was copied onto the department's permanent logs when the requisition slip was destroyed several months later. The pathologist testified that no patient history or reason for the pathology exam was included on the requisition slip as far as he could recall. The hospital pathology report which indicated that there was no evidence of fetal parts in the tissue sample was sent to Dr. Batoyon, but not to appellant or her family physician on Truk.

Appellant returned to Truk the day after the abortion. Some time later Schenck began experiencing difficulties and consulted Dr. Hobson in Truk. He diagnosed a hyatidiform mole and indicated that another D&C operation would be necessary to clear the uterus of this abnormal tissue growth. During the course of the subsequent surgery, Dr. Hobson found fetal tissue in appellant's uterus. When the physician removed the four-month-old fetus, bleeding became so severe that the physician had to perform a hysterectomy upon appellant. Appellant's uterus was completely removed.

Pursuant to the Guam Government Claims Act, Government Code of Guam, § 6500 et seq., Schenck made a claim against GMH and the Government of Guam alleging that the hospital was liable for negligently failing to determine that the fetus had not been removed by the abortion surgery. Appellant's claim was denied by the Attorney General of Guam.

Appellant then filed suit against defendants under § 6500 et seq., which provides for a non-jury trial in the Superior Court of Guam. Appellant alleged that her injuries were caused by the hospital's negligent failure to review and supervise surgical procedures of the physicians who practiced within the hospital. Schenck contended that GMH had not properly instituted an audit review committee and a tissue review committee to review physicians' procedures, had not implemented proper procedures within its pathology lab including the requirement that a patient's clinical history accompany every specimen, and had not established a therapeutic abortion policy. She contended that if such actions had been taken by the hospital, it would have been noted that Dr. Batoyon's diagnoses were inconsistent and that no fetal tissue was found following the therapeutic abortion. Schenck argued that GMH's standard of care should be measured by the guidelines established in its own by-laws and in the national hospital accreditation manual and also by comparison with other hospitals in the community. Schenck claimed that in August, 1973, GMH was not in compliance with its by-laws and the accreditation guidelines in several areas related to Schenck's treatment and that its pathology lab procedures were not as thorough as those followed at the Guam Naval Hospital.

The Superior Court of Guam found:

It is crystal clear that compliance with the By-laws and the Manual for Hospital Accreditation was ignored during the confinement of this patient. There was no clinical history sent with the tissue to the pathologist. The pathologist made no inquiry after finding no fetal parts. No Medical Review Committee was in existence to review medical records. No Tissue Committee to review surgical procedure. The hospital records indicated incomplete abortion as an admitting and final diagnoses. The psychiatrist, Dr. David Kennedy, recommended therapeutic abortion.

\*   \*   \*   \*   \*   \*

Had there been a medical review of records, an inquisitive pathologist, a tissue committee, rules and regulations governing therapeutic abortion, [or] review of operative procedure, the plaintiff would not have walked out of the halls pregnant, which later subjected her to a hysterectomy. Citing *Hendrickson v. Hadkin [Hodkin]*, [250 A.D. 619] 294 N.Y.S. 928; *Darling v. Charleston Community Memorial Hospital*, (1965) 33 Ill.2d 253 [326] [211 N.E.2d 253], 14 A.L. R.3d 873 [860].

The appellate division of the Guam District Court reversed. The court determined that the hospital could not be found liable under a theory of respondeat superior because Dr. Batoyon was not a hospital employee and there was insufficient evidence to establish negligence on the part of the hospital nurse or pathologist. The court did not disagree with the Superior Court's findings that the hospital itself failed to follow certain recommended procedures for surgical review as set forth by national accreditation standards and the hospital by-laws. However, the district court concluded that such acts could not render the hospital liable because the hospital owed no duty to a

patient to supervise and review the surgery of a private physician who used the hospital facilities.

*Discussion*

A. *Standard of Review*

■ The Organic Act of Guam, 48 U.S.C. § 1424, created the District Court of Guam and conferred upon it a dual jurisdiction— that of a district court of the United States and that of a local court of Guam. This district court has original and exclusive jurisdiction of all cases arising under the constitution, treaties and laws of the United States. This hybrid court also has original jurisdiction of all other causes in Guam which have not been transferred to other local courts and appellate jurisdiction to the extent that the legislature may determine. *Guam v. Olsen*, 431 U.S. 195, 97 S.Ct. 1774, 52 L.Ed.2d 250 (1977); *Look v. Government of Guam*, 497 F.2d 699, 700 (9th Cir. 1974).

Appellant's claim was brought under the Guam Government Claims Act, Government Code of Guam, § 6500 et seq., a local law, requiring that suit be filed in the Superior Court of Guam. An appeal was made to the Guam District Court, appellate division, in its capacity as a local territorial appellate court.

■ In reviewing a decision of a territorial court, we are required to give a high degree of deference to its determination of local law. Specifically, we may not overturn the decision of the District Court of Guam on a matter of local law, custom or policy if the decision is based upon a tenable theory and is not inescapably wrong or manifest error. *Island Equipment Land Co. v. Guam Economic Development Authority*, 474 F.2d 753 (9th Cir. 1973); *Capital Insurance and Surety Co. v. Globe Indemnity Co.*, 382 F.2d 623 (9th Cir. 1967); *Townsend v. Benavente*, 339 F.2d 421 (9th Cir. 1964); *Gumataotao v. Government of Guam*, 322 F.2d 580 (9th Cir. 1963). *See also DeCastro v. Board of Commissioners*, 322 U.S. 451, 458, 64 S.Ct. 1121, 88 L.Ed. 1384 (1944); *Bonet v. Texas Co.*, 308 U.S. 463, 470, 60 S.Ct. 349, 84 L.Ed. 401 (1940).

If the decision is based on a tenable theory, we may not reverse even if we disagree with the ruling or believe that the territorial court's conclusion is the least desirable of several possible alternatives. *Capital Insurance and Surety Co.*, 382 F.2d at 626; *DeCastro*, 322 U.S. at 459, 64 S.Ct. 1121; *Bonet*, 308 U.S. at 471, 60 S.Ct. 349.

■ In this circuit, a finding of negligence, or lack of negligence, is usually considered a question of fact and is therefore reviewable under the clearly erroneous standard. *United States v. Babbs*, 483 F.2d 308, 311 (9th Cir. 1973); 9 Wright & Miller *Federal Practice and Procedure* § 2590. However, where, as here, the issue is whether the district court properly defined the legal theory of liability, we are dealing with a question of law, *Miller v. United States*, 587 F.2d 991, 994 (9th Cir. 1979).

B. *Independent Liability of Guam Memorial Hospital*

■ The district court agreed with the Superior Court that GMH had failed to follow certain recommended procedures for surgical review as set forth in its own by-laws and in the Accreditation Manual for Hospitals. However, the district court determined under the facts of this case that there was no legal duty requiring a hospital to supervise and review the surgery of a private physician who uses hospital facilities to treat private patients. Absent such a duty, the Court held that the hospital could not be held liable for failing to follow these procedures. In reaching this legal conclusion, the district court distinguished a number of state court cases which have indicated that liability could be imposed upon a hospital on a theory of independent negligence if the hospital failed properly to review or supervise the treatment given to a patient by a private physician using hospital facilities if the situation indicated that the hospital had the opportunity for such review but failed to exercise it, or if the hospital employees were negligent in failing to call the attention of the hospital authori-

ties to the inadequacy or impropriety of the treatment being given.[1]

There is substantial evidence in the record that the hospital did not follow its own by-laws and the guidelines of the Hospital Accreditation Manual because it did not establish and utilize an adequate audit committee and tissue review committee so as to review medical work done by private physicians within the hospital. There is also evidence it did not utilize accepted procedures in its pathology department and it did not have a policy in regard to therapeutic abortion. This evidence gives factual support to the finding of negligence by the trial court. However, any finding of negligence by the hospital must be predicated upon the existence of a legal duty of the hospital to the patient to review or supervise the treatment given in the hospital by a private physician. The district court acting in its capacity as the local appellate court for the Territory of Guam concluded as a matter of law that no such duty existed in that jurisdiction.

We cannot say that the district court's legal conclusion is without a rational basis or is inescapably wrong. This independent or corporate theory of liability as applied to hospitals has not been firmly or generally established as a theory of liability and has been embraced by only a few jurisdictions. *See* Comment, *The Hospital-Physician Relationship: Hospital Responsibility for Malpractice of Physicians,* 50 Wash.L.Rev. 385 (1975); Southwick, *The Hospital as an Institution—Expanding Responsibilities Change its Relationship with Staff Physician,* 9 Calif.West.L.Rev. 429 (1971). We cannot say that it is manifest error for the Guam District Court to decline to apply this emerging theory of liability within that jurisdiction. We must defer to the district court's conclusion that GMH did not have an independent duty to supervise or review treatment given by a private physician.

## C. *Liability of Guam Memorial Hospital under Respondeat Superior*

█ We agree with the district court's conclusion that the evidence is insufficient to hold the hospital liable for appellant's injuries based upon a theory of respondeat superior. The Superior Court of Guam did not make a specific factual finding that any hospital employee was individually negligent toward the appellant. Upon review of the evidence presented, we conclude that the district court's determination that the evidence is insufficient to sustain a finding of liability based on respondeat superior is correct.

Dr. Batoyon was not a hospital employee. There was no evidence of negligence on the part of the operating room nurse, who was an employee. The appellant contends that the pathologist, who was a hospital employee, was negligent. The pathologist did examine and correctly identified the tissue samples sent to him. The only information given to the pathologist with the request to examine the tissue was the diagnosis of an incomplete abortion. The pathologist was not informed of the possibility that a therapeutic abortion had been performed. With the information supplied to the pathologist there was no reason for him to suspect that a therapeutic abortion had been improperly performed. Appellant argues that had proper hospital procedures been established the pathologist would have been so informed. However, this does not provide a basis for a finding of negligence on the part of the pathologist, rather it relates to the previously discussed issue of whether an independent duty exists on the part of the hospital to review or supervise the treatment of a private physician. There is therefore, no basis for liability of GMH founded on respondeat superior.

1. *See, e. g., Darling v. Charleston Community Memorial Hospital,* 33 Ill.2d 326, 211 N.E.2d 253 (1965), *cert. denied,* 383 U.S. 946, 86 S.Ct. 1204, 16 L.Ed.2d 209 (1966); *Gridley v. Johnson,* 476 S.W.2d 475 (Mo.1972); *Ravenis v. Detroit General Hospital,* 63 Mich.App. 79, 234 N.W.2d 411 (1976); *Corletto v. Shore Memorial Hospital,* 138 N.J.Super. 302, 250 A.2d 534 (1975); *Foley v. Bishop Clarkson Memorial Hospital,* 185 Neb. 89, 173 N.W.2d 881 (1970); *Collins v. West Lake Community Hospital,* 57 Ill.2d 388, 312 N.E.2d 614 (1974); *Garfield Memorial Hospital v. Marshall,* 92 U.S.App.D.C. 234, 204 F.2d 721 (D.C.Cir.1953).

The decision of the District Court of Guam is Affirmed.