**CHASE MANHATTAN BANK, N. A.,**
**Plaintiff-Appellant,**

v.

**GEMS–BY–GORDON, INC.,**
**Defendant-Appellee.**

No. 79–4629.

United States Court of Appeals,
Ninth Circuit.

Submitted May 12, 1981.

Decided June 29, 1981.

---

Howard Trapp, Trapp, Gayle, Teker, Lacy, Moore & Layne, Agana, Guam, for plaintiff-appellant.

Matthew C. Gruskin, Barrett, Ferenz, Bramhall, Williams & Gruskin, Agana, Guam, for defendant-appellee.

Before MARKEY,* Chief Judge, United States Court of Customs and Patent Appeals, and HUG and POOLE, Circuit Judges.

POOLE, Circuit Judge:

The Chase Manhattan Bank, N.A. (Chase) seeks to impose and foreclose an equitable mortgage on real property located in Agana, Guam. The equitable mortgage is said to arise from an agreement executed in connection with a loan transaction. Both the Superior Court of the Territory of Guam and the United States District Court for the District of Guam, Appellate Division, refused to enforce the negative pledge as an equitable mortgage. We affirm.

I

The facts are not disputed. Gems-by-Gordon, Inc. (Gems) holds a sublease on property described as "the eastern portion of Lot No. 2033, Lot No. 2019 and the old Agana Dededo Road, municipality of Dededo, not presently occupied by A & W Drive In." The term of the sublease runs from September 1, 1971 through August 31, 2017. Sometime before September 1, 1976, Gems

---

* Honorable Howard T. Markey, Chief Judge, United States Court of Customs and Patent Appeals, sitting by designation.

was obligated to construct and did construct an office building on the property known as the "My Way Building." Gems leased the building to American West, Inc. The principal officer of both Gems and American West is Gordon E. Mailloux.

On August 14, 1974, Mailloux executed on behalf of Gems a negative pledge on the property in favor of Chase. The pledge provides:

## NEGATIVE PLEDGE AGREEMENT

For and in consideration of $100,000 and until this loan is fully paid, we hereby agree that we will not, without first having procured the written consent of The Chase Manhattan Bank, N.A., further mortgage or sell our real estate property located in the Eastern Portion of Lot No. 2033 (known as "My Way Building") on Marine Drive, Agana, Guam under Certificate of Title No. _____ and if necessary, we will mortgage this property together with the improvements thereon to The Chase Manhattan Bank, N.A.

This pledge was sought by Chase as security for a line of credit it agreed to extend and which was recorded on November 7, 1974. In 1975, American West, acting through Mailloux, executed five promissory notes in favor of Chase in the total amount of approximately $105,000. The notes were subsequently assigned to Mailloux who, after making some payments, defaulted. Chase brought suit against Gems in the superior court asking that the negative pledge be enforced and foreclosed as an equitable mortgage against the sublease and building.

The superior court judge entered findings of fact and conclusions of law. He found that the negative pledge agreement was indefinite and uncertain in that it did not describe with sufficient particularity the property subject to the negative pledge agreement.[1] The court ruled as a matter of law that the negative pledge was unenforceable as an equitable mortgage because the property subject to such a mortgage could not be definitely determined. The United States District Court of Guam, Appellate Division, affirmed. It adopted the findings and rationale of the superior court that the property subject to the pledge could not be specifically identified and therefore an equity court would not impose a mortgage. Chase filed a timely notice of appeal and the case came here.

## II

■ We will generally defer to interpretations of Guam law adopted by the United States District Court for the District of Guam, Appellate Division. Determinations of Guam law by that court will be affirmed on appeal if they are based upon a tenable theory and are not manifestly erroneous. *See, e. g., People of the Territory of Guam v. Dela Rosa*, 644 F.2d 1257 at 1260 (9th Cir. as amended May 15, 1981); *Schenck v. Government of Guam*, 609 F.2d 387, 390 (9th Cir. 1979); *Gumataotao v. Government of Guam*, 322 F.2d 580, 582 (9th Cir. 1963). This case, dealing with a Guam loan transaction involving local real estate, is governed by local Guam law and subject to this deferential standard of review.

■ In addition to these considerations, however, this court has repeatedly indicated that it may affirm the decision of a district court on any legal basis reflected in the record. *See, e. g., United States v. Humboldt County, California*, 628 F.2d 549, 551 (9th Cir. 1980). And we have said, in diversity cases for example, that a different legal basis for affirmance may be invoked and a rule of state law different from that used by the district court applied even if the question presented to us for review has not been resolved by the state courts. *See*

---

1. The superior court also found that the negative pledge agreement would not create a legal mortgage because it was no more than an agreement to agree in the future to a legal mortgage if one became "necessary." As an alternative holding, the court ruled that an eq- uitable mortgage could not be imposed because it would amount to an unlawful restraint on alienation in violation of Guam Civ. Code § 715. The district court did not examine either of these determinations and we need not do so to resolve this case.

*id.* Obviously, when dealing with a case in which determinations of local law are substantially left to another court, as in matters of local Guam law, we must be cautious not to affirm by invoking a theory which the local courts might themselves reject. When, however, there is a substantial body of legal authority under which affirmance is indicated, and in the absence of any indication that the local courts would reject that authority, affirmance on a basis other than that adopted by the district court is appropriately employed. We follow that course in this case and affirm.

### III

Our review of the record reveals no finding by the Guam courts that the parties to the negative pledge agreement intended to create any mortgage or lien on Gem's property.[2] Case law in American jurisdictions indicates that property will not be subjected to an equitable mortgage unless the equity court finds that the parties intended to create a legal mortgage but were unsuccessful. *See, e. g., Equitable Trust Co. v. Alesi*, 287 Md. 249, 412 A.2d 96, 99–100 (1980) (and cases cited therein). It is also apparent that American jurisdictions will generally not construe a negative pledge agreement, such as in this case, as evidence establishing that the parties intended to create a legal mortgage.[3] No independent evidence of the parties' intention to create a mortgage is present in this record. We have not been directed to any

body of Guam law which would suggest that this well established requirement for an equitable mortgage should not be applied in this case. Therefore, we affirm the district court's refusal to impose an equitable mortgage based on the negative pledge agreement.

*AFFIRMED.*

---

2. The superior court's findings, which were adopted by the district court, included a determination that "the purpose of the negative pledge agreement was to secure the said promissory notes . . . ." Yet to say that the negative pledge was security for the debt is not to say that it was intended as a mortgage. *See, e. g., Tahoe National Bank v. Phillips*, 4 Cal.3d 11, 480 P.2d 320, 92 Cal.Rptr. 704 (1971). There are no findings in the record before us which would suggest that the parties intended to create a mortgage on Gem's property by virtue of the negative pledge.

3. *See Browne v. San Luis Obispo National Bank*, 462 F.2d 129 (9th Cir. 1972) (applying California law); *Weaver v. Tri City Credit Bureau*, 27 Ariz.App. 640, 557 P.2d 1072 (1976); *Tahoe National Bank v. Phillips, supra; Mana-*

*tee Federal Savings & Loan Assoc. v. Pace*, 378 So.2d 95 (Fla.App.1979); *Bankers Trust Co. v. Chicago Title & Trust Co.*, 89 Ill.App.3d 1014, 45 Ill.Dec. 309, 412 N.E.2d 660 (1980); *Equitable Trust Co. v. Alesi, supra; Knott v. Manufacturing Co.*, 30 W.Va. 790, 5 S.E. 266 (1888); *compare Coast Bank v. Minderhout*, 61 Cal.2d 311, 392 P.2d 265, 38 Cal.Rptr. 505 (1964) (distinguished and limited by California's Supreme Court in *Tahoe National Bank*). *See also* G. Osborne, *The Law of Mortgages* § 44 (2d ed. 1970); 2 G. Gilmore, *Security Interests in Personal Property* § 38.4 (1965); Coogan, Kripke & Weiss, *The Outer Fringes of Article 9: Subordination Agreements, Security Interests in Money and Deposits, Negative Pledge Clauses, and Participation Agreements*, 79 Harv.L.Rev. 229, 264 (1965).