The PEOPLE OF THE TERRITORY OF GUAM, Plaintiff-Appellee,

v.

Gregory Junior FEJERAN, a/k/a Gregory Cruz, Defendant-Appellant.

No. 81–1512.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 14, 1982.

Decided Sept. 15, 1982.

Rehearing and Rehearing En Banc Denied Nov. 30, 1982.

Richard A. Pipes, Arriola & Cowan, Agana, Guam, for defendant-appellant.

Leslie R. Weatherhead, Asst. Atty. Gen., Agana, Guam, for plaintiff-appellee.

Before BROWNING, Chief Judge, and SKOPIL and NORRIS, Circuit Judges.

PER CURIAM:

Gregory Fejeran was convicted on two counts of murder after a jury trial in the Superior Court of Guam. He appealed unsuccessfully to the Appellate Division of the District Court of Guam. He raises the same issues on appeal to this court.

Appellant contends his trial in the Superior Court violated the double jeopardy clause of the fifth amendment, imposed upon Guam by the fourteenth amendment, because appellant had been put in jeopardy for the same offense in an earlier proceeding in the Juvenile Court of Guam. He also contends that the district court erred in refusing to instruct the jury on manslaughter.

I.

In *Breed v. Jones*, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975), the Supreme Court held a juvenile is put in jeopardy within the meaning of the fifth amendment if he is subjected to a proceeding that may result in an adjudication that he has committed criminal acts, and that may put his liberty and reputation at risk. 421 U.S. at 529, 537–38, 95 S.Ct. at 1785, 1789–90. The Appellate Division of the District Court of Guam held *Breed* inapplicable on the ground the juvenile court had no power under section 255 of the Guam Code of Civil Procedure (as amended by P.L. 14–141, section 15) to determine whether appellant had engaged in criminal acts, but only to determine whether his case should be heard in the juvenile court or transferred to the superior court. The district court said:

[T]he Certification Hearing which defendant complains of could not have resulted in an adjudication of criminal delinquency, because by its own terms a Section 255 Hearing merely authorizes the judge to determine in which forum the actual adjudicatory hearing is to proceed. Here there was no jurisdiction for the lower court to have judged defendant a delinquent in violation of the law; therefore, the defendant's liberty and reputation were not threatened as was the case in *Breed, supra.*

The conclusion of the Appellate Division was sound if the court correctly interpreted the Guam statute, "for it is settled that an accused cannot be placed in jeopardy by a court lacking jurisdiction to decide his case." *Hall v. McKenzie*, 575 F.2d 481, 484 (4th Cir. 1978).

Determinations of local law by the District Court of Guam are given great deference, *Chase Manhattan Bank v. Gems-By-Gordon, Inc.*, 649 F.2d 710, 712 (9th Cir. 1981); *Schenck v. Government of Guam*, 609 F.2d 387 (9th Cir. 1979), particularly those relating to the interpretation of local legislation. *People of Territory of Guam v. Dela Rosa*, 644 F.2d 1257, 1260 (9th Cir. 1981). The territorial court's rulings in this respect "will not be reversed unless clear and manifest error is shown." *Gumataotao v. Government of Guam*, 322 F.2d 580, 582 (9th Cir. 1963). *See also Bonet v. Texas Co.*, 308 U.S. 463, 470–71, 60 S.Ct. 349, 353, 84 L.Ed. 401 (1940); *DeCastro v. Board of Commissioners of San Juan*, 322 U.S. 451, 64 S.Ct. 1121, 88 L.Ed. 1384 (1941).

The Appellate Division's interpretation of the Guam statute as providing for a certification hearing confined to whether the juvenile should be dealt with as an adult, followed by a proceeding in the juvenile or superior court in which the juvenile's conduct is adjudicated, is a reasonable one.

Unlike the California statute involved in *Breed*, which required a threshold determination by the juvenile court that the juvenile "had *violated* any law of this state," Cal.Welfare Inst.Code §§ 602, 701, the Guam statute confers jurisdiction on the

juvenile court over any juvenile who "is *alleged* to have violated" the law (emphasis added). Guam Code Civ.P. § 252(a)(4). Rule 20(e)(J)(2) of the Rules of Procedure for the Juvenile Court of Guam, which "govern[s] the practice and procedure in the juvenile court in all proceedings coming within the jurisdiction of the court" (Rule 1), provides:

> Upon filing of such a petition [for certification], the court shall schedule it for preliminary hearing for the sole purpose of determining whether the juvenile should be certified to the criminal court for prosecution as an adult. The evidence to be presented and considered at such preliminary hearing, including the examination and cross-examination of the juvenile and other witnesses, shall relate only to the issue to be decided by the court at such hearing, and not to the issues of guilt or innocence of the charge or of probable cause.

We are advised by the Attorney General of Guam that Guam's juvenile court has adhered consistently to the "rule that a certification hearing is distinct from an adjudicatory hearing, and has required a separate adjudicatory hearing even where it has elected to retain jurisdiction over juveniles rather than certify them." We have been furnished copies of orders of the juvenile court reflecting this practice. Appellant has offered nothing to the contrary.

The Guam statute would have been unconstitutional if read as requiring or permitting an adjudication of criminal conduct (*see Rios v. Chavez*, 620 F.2d 702 (9th Cir. 1980); *Sims v. Engle*, 619 F.2d 598 (6th Cir. 1980)), and it was appropriate to adopt the interpretation that would sustain its validity. *Industrial Union Dep't, AFL–CIO v. American Petroleum Institute*, 448 U.S. 607, 646, 100 S.Ct. 2844, 2866, 65 L.Ed.2d 1010 (1979).

Appellant argues that his guilt of the offenses charged was in fact litigated at the certification hearing. On the contrary, the transcript reflects that the hearing was devoted solely to appellant's amenability to treatment as a juvenile. This was the purpose announced by the trial judge at the outset. Counsel for both sides directed their arguments solely to whether appellant should be treated as an adult, and the court's judgment included no adjudication that appellant had committed criminal acts. Although evidence was received regarding the circumstances surrounding the alleged offenses, there is nothing to suggest it was considered for any purpose other than determining appellant's amenability to treatment, an issue to which it was obviously relevant (*Brown v. Cox*, 481 F.2d 622, 631–32 (4th Cir. 1973)), or as bearing upon the sufficiency of the evidence to justify criminal prosecution. *Rios, supra*, 620 F.2d at 707; *see Breed, supra*, 421 U.S. at 536, 538 & n.18, 95 S.Ct. at 1789, 1790 & n.18.[1]

We conclude Fejeran was not twice placed in jeopardy.

## II.

Fejeran was charged with two counts of violation of section 16.30 of Guam's Criminal and Correctional Code (Criminal Code) for having "knowingly cause[d]" the deaths of Officers Iglesias and Lizama. Section 16.30 provides:

> (a) Except as provided in Section 16.40, criminal homicide constitutes murder when: (1) it is committed intentionally or knowingly; or (2) it is committed recklessly under circumstances manifesting extreme indifference to the value of human life.
>
> (b) Murder is a felony of the first degree but a person convicted of murder may be

---

1. The juvenile court found the evidence offered at the certification hearing would justify the return of a true bill against appellant. *See Kent v. United States*, 383 U.S. 541, 567, 86 S.Ct. 1045, 1060, 16 L.Ed.2d 84 (1966). Appellant argues the court violated the admonitions of Guam Juvenile Court Rule 20(e)(J)(2), quoted in the text, that evidence relating to proba-ble cause should not be presented and considered at a certification hearing. Since this contention was raised for the first time in appellant's post-argument supplemental reply brief, we decline to consider it. *Southeast Legal Defense Group v. Adams*, 657 F.2d 1118, 1126 (9th Cir. 1981).

sentenced to life imprisonment notwithstanding any other provisions of law; provided, however, that any person convicted of murder which is a felony of the first degree shall not be eligible for parole nor shall his sentence be suspended.

Fejeran requested the court to instruct the jury on manslaughter, using the words of section 16.40(a), which provides:

(a) Criminal homicide constitutes manslaughter when: (1) it is committed recklessly, or (2) a homicide which would otherwise be murder is committed under the influence of extreme mental or emotional disturbance for which there is reasonable explanation or excuse. The reasonableness of such explanation or excuse shall be determined from the viewpoint of a reasonable person in the defendant's situation under the circumstances as he believes them to be. The defendant must prove the reasonableness of such explanation or excuse by a preponderance of the evidence.

(b) Manslaughter is a felony of the second degree.

The trial court denied the request, stating there was no "reasonable explanation or excuse as set forth in Section 16.40." Fejeran argues the court's refusal to instruct the jury on manslaughter was reversible error because the record contains "evidence fairly tending to bear upon the issue . . . ."

It has long been "beyond dispute that the defendant is entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater." *Keeble v. United States*, 412 U.S. 205, 208, 93 S.Ct. 1993, 1995, 36 L.Ed.2d 844 (1973). *See also Sansone v. United States*, 380 U.S. 343, 349, 85 S.Ct. 1004, 1009, 13 L.Ed.2d 882 (1965); *Berra v. United States*, 351 U.S. 131, 134, 76 S.Ct. 685, 687, 100 L.Ed. 1013 (1956). This principle was first announced in *Stevenson v. United States*, 162 U.S. 313, 323, 16 S.Ct. 839, 843, 40 L.Ed. 980 (1896):

A judge may be entirely satisfied from the whole evidence in the case that the person doing the killing was actuated by malice; that he was not in any such passion as to lower the grade of the crime from murder to manslaughter by reason of any absence of malice; and yet if there be any evidence fairly tending to bear upon the issue of manslaughter, it is the province of the jury to determine from all the evidence what the condition of mind was, and to say whether the crime was murder or manslaughter.

■ Rule 31(c) of the Federal Rules of Criminal Procedure provides that "[t]he defendant may be found guilty of an offense necessarily included in the offense charged . . . ." Although the Rule is permissively phrased, we have interpreted it as granting a defendant a right to a lesser included offense instruction if the evidence warrants it. *See, e.g., United States v. Johnson*, 637 F.2d 1224, 1233–34 (9th Cir. 1980); *United States v. Crutchfield*, 547 F.2d 496, 499–500 (9th Cir. 1977); *United States v. Celestine*, 510 F.2d 457, 460 (9th Cir. 1975); *Olais-Castro v. United States*, 416 F.2d 1155, 1157 (9th Cir. 1969). The right to such an instruction has been codified in section 90.27 of the Guam Code of Criminal Procedure:

When there is a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of an included offense, the court shall charge the jury with respect to the included offense.

The parties agree that in this case manslaughter under section 16.40 is a lesser offense included in murder under section 16.30. The remaining question is whether a disputed factual element exists that would have permitted a rational jury to convict Fejeran of manslaughter and acquit him of murder.

■ Fejeran was charged with "knowingly" causing the deaths of the two officers in violation of section 16.30. Homicide is committed "knowingly" within the meaning of section 16.30 if the perpetrator is aware that his conduct was "practically certain" to cause death. Criminal Code § 4.30(b). Homicide accompanied by such knowledge constitutes manslaughter under section 16.40 if committed "under the influence of extreme mental or emotional disturbance for which there is reasonable explanation or excuse." Fejeran contends there was evidence from which the jury could rationally conclude that he shot the officers under the influence of such an extreme emotional disturbance.

The evidence relied upon is as follows. Fejeran, then 17, and several young friends went for a ride in his car looking for bicycles to steal. Becoming thirsty, Fejeran drove to a market, broke in, and took some beer. The two officers drove up as Fejeran

was placing the stolen beer in his car. Officer Iglesias opened a door of the car. He saw a gun on the floor. The officer and Fejeran struggled for possession. Fejeran prevailed. Officer Iglesias pulled out his own gun. Fejeran seized Officer Lizama, pointed his gun at her and asked Officer Iglesias to leave. Officer Iglesias got into the police car, started the car forward, stopped it abruptly, left the car, and opened fire on Fejeran. Fejeran fired back. Fejeran testified: "I didn't intend to pull the trigger. I was scared then. It's my reaction." Seven shots were exchanged. Officer Iglesias firing four, Fejeran three. Both officers were killed.

Fejeran contends that under the decision in *Stevenson v. United States, supra,* 162 U.S. 313, 16 S.Ct. 839, 40 L.Ed. 980 this evidence was sufficient to require an instruction on the lesser included offense of manslaughter. We are constrained to agree.

*Stevenson* involved the killing of a deputy United States marshal named Gaines. Gaines undertook to arrest Stevenson. Stevenson threatened to stab Gaines; Gaines threatened to shoot Stevenson. They separated, Stevenson, angry, excited and armed with a rifle, entered a saloon. Gaines pushed his pistol through the saloon door and fired a shot, missing Stevenson by six inches. Stevenson turned and immediately shot back, killing Gaines. *Id.* at 316–19, 16 S.Ct. at 840–41. The trial court instructed the jury on murder and self-defense but refused Stevenson's proposed instruction on the lesser included offense of manslaughter. *Id.* at 314, 16 S.Ct. 839. The Supreme Court reversed.

Under the definitional scheme of homicide at issue in *Stevenson,* homicide with malice was murder and without malice was manslaughter. *Id.* at 320, 16 S.Ct. at 841–42. The Supreme Court held the evidence was sufficient to raise a question of fact for the jury as to whether "the effect of the conduct of the deceased in shooting, as he did, into the saloon . . . was such as naturally tended to and did excite in the mind of the plaintiff in error sudden passion, either of rage or fear, and under the influence of which he fired the shot and killed the deceased willfully and unlawfully, but at the same time without malice." *Id.* at 320, 16 S.Ct. at 841. The court continued:

> It seems quite plain, that an assault upon another by means of firing a pistol at him, is naturally calculated to excite some kind of passion in the one upon whom such an assault is made. It might be one of anger or it might be terror. If either existed to a sufficient extent to render the mind of a person of ordinary temper incapable of cool reflection, it might be plausibly claimed that the act which followed such an assault was not accompanied by the malice necessary to constitute the killing murder. Whether such a state of mind existed in this case, and whether the plaintiff in error fired the shot under the influence of passion and without malice, cannot be properly regarded as a question of law.

162 U.S. at 322, 16 S.Ct. at 842.

· This case cannot be distinguished from *Stevenson.* We may be satisfied on the whole evidence, as was the trial judge, that Fejeran did not shoot the officers "under the influence of extreme mental or emotional disturbance for which there is reasonable explanation or excuse"; in light of *Stevenson,* however, we cannot say a rational jury could not reach the opposite conclusion. The question was one of fact to be submitted to the jury under proper instructions.

■ Finally, Fejeran contends that to require the defendant to carry the burden of proving extreme mental or emotional disturbance by a preponderance of the evidence in order to mitigate murder to manslaughter is unconstitutional under *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). An identical scheme was upheld in *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). *Compare* Guam Criminal Code §§ 16.30, 16.40 *and* Comments *with* N.Y.Penal Law §§ 125.20, 125.25.

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

### Order

On petition for rehearing, appellant argues that insofar as *Gumataotao v. Government of Guam,* 322 F.2d 580, 582 (9th Cir. 1963), and this case requires deference to the territorial court's interpretation of local law, they are inconsistent with this court's prior decisions in *Carscadden v. Territory of Alaska,* 105 F.2d 377 (9th Cir. 1939). Our

decision in *Carscadden* was undercut by *DeCastro v. Board of Commissioner of San Juan,* 322 U.S. 451, 458, 64 S.Ct. 1121, 1125, 88 L.Ed. 1384 (1941) and *Bonet v. Texas Co.,* 308 U.S. 463, 470–71, 60 S.Ct. 349, 353, 84 L.Ed. 401 (1940), and has not been subsequently followed. Recent cases applying the rule of deference in appeals from the district court of Guam include *Chase Manhattan Bank, N.A. v. Gems-By-Gordon, Inc.,* 649 F.2d 710, 712 (9th Cir. 1981); *People of the Territory of Guam v. Dela Rosa,* 644 F.2d 1257, 1260 (9th Cir. 1981); and *Schenk v. Government of Guam,* 609 F.2d 387, 390 (9th Cir. 1979).

Before KASHIWA,* Court of Claims Judge, ANDERSON and FERGUSON, Circuit Judges.